## STINSON v. NEW YORK LIFE INS. CO.
### Civil Action No. 3398I.

District Court of the United States for the District of Columbia.

Feb. 6, 1947.

Harry A. Finney (of Finney & Threadgill), of Washington, D. C., for plaintiff.

G. B. Craighill, of firm of McKenney, Flannery & Craighill, of Washington, D. C., for defendant.

MORRIS, Justice.

This is an action brought by the plaintiff as beneficiary named in a policy of life insurance issued by the defendant to plaintiff's husband, Jack L. Stinson, as insured, in the face amount of $10,000 insurance. The policy contains a provision that it is "free of conditions as to residence, travel, occupation and military and naval service. [sic.] Except as provided by the additional

conditions relating to war and aviation." Such conditions relating to war and aviation, attached to and made a part of the policy, in so far as relevant here, reads as follows:

"In addition to all other conditions set forth therein said Policy is subject to the following conditions:

"The only amount payable under this Policy shall be the restricted amount hereinafter defined if the death of the Insured shall occur under the circumstances set forth in any one or more of the following clauses (1), (2), (3), or (4), namely

"(1) outside the Home Areas while the Insured is in the military or naval forces of any country engaged in war;

"* * * Said restricted amount shall be a sum equal to the premiums which shall have fallen due hereunder prior to the date of death of the Insured and been paid to and received by the Company, together with compound interest at the rate of three per cent per annum, plus the reserve on any outstanding dividend additions, and any outstanding dividends, including dividend deposits, and less any indebtedness hereon. * * *

"Wherever used in this Policy,

" 'Home Areas' means the forty-eight states of the United States of America, the District of Columbia, The Dominion of Canada and Newfoundland;

" 'war' includes undeclared war;
"* * *"

In the answer defendant denies liability for the face amount of the policy on the ground that the death of the insured occurred on October 2, 1945, in France, outside of the "home areas" defined in the policy, while the insured was in the military service of the United States of America, which was on the date of the death of the insured a "country engaged in war." Defendant tendered to the plaintiff the "restricted amount" due under said policy under such conditions, the said restricted amount being $680.59, represented by a certificate of deposit for that amount, with interest, as provided for in said policy. There is no dispute that the insured at the time of his death was a Major in the Quartermaster Corps of the United States Army and died instantly in a fall from a window of a hotel at Reims, France, on October 2, 1945.

Upon defendant's motion for summary judgment, which was opposed by plaintiff, and upon plaintiff's motion for summary judgment, which was opposed by defendant, the critical question to be decided is whether on not the United States was a "country engaged in war" at the time of the death of the insured. The plaintiff most ably and vigorously contends that the term "engaged in war," as used in the policy, means in actual combat, as the term "engaged" connotes the exercise of actual hostile force. This was not the situation, plaintiff asserts, at the time of the death of the insured. It is claimed that, even if this is not the clear unequivocal meaning of the term used in the policy, such term is so ambiguous that the recognized rule that ambiguous provisions in a life insurance policy should be given that meaning most favorable to the insured compels the construction such as that contended for by plaintiff. The defendant insists that within the clear meaning of the provision the United States was a country engaged in war at the time of the insured's death, that only the restricted amount is payable under the policy, and further insists that there is no ambiguity in the provision which would permit the construction contended for by plaintiff.

No identical provision appears to have been used in policies of insurance which have been the subject of previous judicial discussion. Such provisions as have been construed appear to fall in two general classes: Those which undertake to relieve the insurer from the full obligation of the policy when and while the insured is in a certain "status," and the others which seek to relieve or limit liability of the insurer when death occurs from certain "causes," the risks of which the insurer is not willing to accept. In that type of provisions where it can be said that the "cause" of death is the determining factor, it seems clear that, to be relieved from full liability, such cause of death must in some way be related to the proscribed occupation or activity. Where the type of provision is such as to limit the liability of the insurer with respect to the "status" of the insured at the time

of his death, it seems clear that the critical question is whether or not he was in such status at that time, regardless of the cause of the death. Here the critical question is not whether the insured himself was "engaged in war" at the time of his death, but whether the United States, in whose military service he was then serving, was a "country engaged in war."

 The term has a meaning so well recognized and of such long historical acceptation that it must be presumed to have been clearly understood, not only by the insurer, but by the insured, at the time of his application for and acceptance of the policy here involved to have application to the situation here being considered. The United States becomes engaged in war whenever the Congress makes a declaration of war, or the congressional or executive authority of the Government recognizes that a state of war exists. The United States continues to be engaged in war until the legislative or executive authority, or both, recognize and declare that the United States is no longer so engaged. The judicial branch of the Government must, in this matter, of necessity be bound by and follow the action of the political branches of the Government. The practical necessity and limitations upon the judicial process compel this. To say that hostilities had ceased, requires a proclamation to that effect by the highest executive authority, a proclamation that had not been made prior to the death of the insured, nor indeed at the time of the hearing of this cause. That such proclamation is the normal and usual procedure is found in the fact that since such hearing the President of the United States, on December 31, 1946, declared such hostilities to be ended, although it is still recognized that the United States continues to be in a state of war. As late as September 1, 1945, the President stated to the American people—

"It is not yet the day for the formal proclamation of the end of the war, or of the cessation of hostilities."

By numerous congressional enactments since the surrender of enemy armies, the Congress has recognized that this country was still "engaged in war," and as late as an act approved August 6, 1946, legislation was enacted which referred to "any war in which the United States is engaged on the date of the enactment of this section." Public Law 641, 79th Congress, Chapter 796, Second Session, H. R. 7039, 34 U.S.C.A. § 855c and note 5 U.S.C.A. § 797a. In the light of this generally accepted and recognized meaning of the term used in the policy under consideration, I cannot say that the parties to said insurance contract, or either of them, had any different understanding of the meaning of such provision. Whatever force there is to the contention of plaintiff that the provision under consideration is ambiguous exists, if at all, only as applied to a situation where the death of an insured in the military service of the United States and outside the "home areas" occurred after the declaration that hostilities have ended and before legislative or executive determination that the state of war is over, not to any time prior to the declaration by the President that hostilities have ceased. I cannot, therefore, say that such provision is ambiguous as applied to the instant case.

In this view, plaintiff's motion for summary judgment is denied, and defendant's motion for summary judgment is granted, with judgment, however, in favor of plaintiff for the "restricted amount" provided in the policy.