PALMER v. POKORNY.

1. LANDLORD AND TENANT—CONTRACTS—CONSTRUCTION — LEASE — MASTER AND SERVANT.

Under a contract whereby plaintiff was to have the sole management of a hotel, unless discharged for good cause, until one year after the close of the war, when he was entitled to have a lease for the balance of a 15-year term, plaintiff was not a lessee, but was employed as manager, at the time of his discharge previous to the termination of the war.

2. MASTER AND SERVANT—CONTRACT OF EMPLOYMENT—WRONGFUL TERMINATION—REMEDY—DAMAGES.

If plaintiff was wrongfully deprived of his right to act as manager and to receive compensation therefor he has an adequate remedy at law for his damages.

3. LANDLORD AND TENANT—CONTRACT — CONSTRUCTION — LEASE — "CLOSE OF WAR."

Where, under the terms of plaintiff's contract with defendants he was to be manager of the hotel until one year after the close of the war, "same to be determined when U. S. ceases to be a party in the war," when he was to be entitled to a lease, the addition of the words "and starts to recall and disband the troops," held, not to import any shortening of the period that plaintiff was to act as manager.

4. SAME.

The "close of the war" came on November 12, 1921, on the president's proclamation of peace, after the peace treaty had been ratified by the United States senate and Germany, and is a question to be determined by the political and not the judicial department of the government.

5. SPECIFIC PERFORMANCE—LEASE—PREMATURE SUIT.

A bill for the specific performance of a contract to enter into a lease for a hotel, filed before plaintiff was entitled to the lease, under the terms of the contract, should have been dismissed.

6. JUDGMENT—RES ADJUDICATA.

Plaintiff's contention that, under the terms of the contract, he was entitled to a lease at any time, decided adversely to plaintiff on a former suit and not appealed from, must be treated as *res adjudicata*.

7. SPECIFIC PERFORMANCE—INDEFINITE CONTRACT.

A contract to construct "a building suitable to join with said Berkshire hotel, and one that can be operated as a hotel, at a minimum cost, in conjunction with said" hotel, and lease same to plaintiff, *held*, too indefinite for specific performance, since the building, after erection, would be subject to plaintiff's acceptance and possible objection that it did not comply with the contract.

Appeal from Wayne; Webster (Clyde I.), J. Submitted October 19, 1921. (Docket No. 139.) Decided February 8, 1922.

Bill by Louis G. Palmer against Emil C. Pokorny and another for specific performance of a contract. From a decree for plaintiff, defendants appeal. Reversed, and bill dismissed.

*Prentis, Mulford, Pugh & Fitch,* for plaintiff.

*William Henry Gallagher,* for defendants.

WIEST, J. The bill herein was filed March 22, 1920. The defendants are the owners of the Berkshire hotel, located at 42 Winder street, Detroit. March 21, 1918, the parties to this suit entered into an agreement, the parts of which material to an understanding of the issues being as follows:

"Whereas, said first parties (defendants) are desirous under certain conditions of having said second party (plaintiff) manage said hotel, and later on possibly lease the same, which management and possible leasing said second party is desirous of obtaining under said conditions:   *   *   *

"1. That said second party, from and after the date of this agreement, shall have entire and complete con-

trol of the management and running of said hotel (excepting herefrom the right and privilege of said first parties to enter upon the hotel premises at any time for the purpose of inspection and investigation), for a period of time, up to, and until one year after the close of the present war (same to be determined when U. S. ceases to be a party in the war, and starts to recall and disband the troops), which period of management, however, shall in no case exceed a period of fifteen years, but can be shortened as hereinafter provided for.

"2. The compensation of said second party, as such sole manager, to be one-half of each month's profits, arising from the running of said hotel, each month to be figured independent of, and irrespective of the profits or losses of any other month; and which profits are to be figured upon a basis of first deducting the sum of $1,000 per month, as rental to be paid to said first parties, and all other necessary expenses and repairs incidental to the running of said hotel (taxes, insurance and outside repairs excepted, all of which said first parties agree to assume and pay). If through the gross negligence, or lack of proper supervision or attention by said second party, the proceeds from the running and management of said hotel, for any full month, is insufficient to pay above mentioned rental, expenses and repairs, and said second party does not pay the same, then said first parties shall have the right to terminate said second party's sole management of said hotel, by giving him a sixty days' notice in writing of such termination.

"3. At the expiration of above named period of one year after the close of said war, said first parties, if so requested by said second party, agree that said second party, or a corporation to be formed by said second party for that purpose, shall have a written lease of said hotel for the balance of above named fifteen years, at a rental of $1,000 per month, payable in advance; said lease to be the usual printed form of lease, but to especially provide for the payment of all taxes, insurance and repairs on said building, by said second party or said corporation; and for the giving by said second party or said corporation to said first parties, of a chattel mortgage upon the

furniture, furnishings and fixtures, hereinafter described in this agreement, as collateral security for the performance by said second party or said corporation of the covenants of said lease.  *  *  *

"5. Said second party, or a corporation to be formed by said second party for that purpose, shall, at any time, have a written lease of said hotel for the balance of above named fifteen years, all in accordance with above named written leasing, by paying to said first parties, the balance then owing upon said furniture, furnishings and fixtures, payable as follows: Any amount then owing up to $5,000 in cash, and the balance, if any, at the rate of two hundred ($200.00) dollars a month, including interest at six (6) per cent. per annum, beginning thirty days after the payment of said $5,000 in cash."

Claiming that this agreement was no more than a hiring of plaintiff as manager, and alleging mismanagement on his part, the defendants took possession and claim they terminated the employment of plaintiff. Plaintiff insists that the agreement constituted a lease to him with a right to a further lease at the time stipulated. The learned circuit judge found that plaintiff was not a lessee but was entitled to a lease in accordance with the agreement, starting with the 26th day of December, 1919, and decreed specific performance of the agreement for such lease. Defendants bring the case here by appeal.

We are of the opinion that under this agreement plaintiff was not a lessee of the hotel but was employed as manager, and such employment was to continue, unless terminated for good cause, until the time stipulated for a lease had arrived. The agreement fixed the term during which plaintiff was to act as manager of the hotel, and until that time expired he was not entitled to a lease. If he was wrongfully deprived of his right to act as manager and to receive compensation therefor he has an adequate remedy at law for his damages. He does not seek such damages here.

Under the terms of the agreement when could he demand a lease? He was to be manager "for a period of time, up to, and until one year after the close of the present war." How was that period to be determined? "Same to be determined when U. S. ceases to be a party in the war, and starts to recall and disband the troops." It appears that defendant Emil Pokorny intended to enlist for the war, and did enlist, and the purpose of carrying on the hotel under the management of plaintiff, not only until one year after the United States ceased to be a party in the war but as well started to recall and disband the troops, is apparent.

The close of the war, standing alone, would undoubtedly mean the date when a treaty of peace would be binding on the belligerents. Now, do the added words import any shortening of that period? We must conclude that such words contemplated a possible peace to be followed by a recall and disbandment of the troops. In fact, however, just the opposite, in part, happened. Troops were recalled following the armistice and disbanded, but some troops are still in Europe, and the United States did not end the war with Germany until the senate ratified the peace treaty on October 19, 1921, and ratifications thereof were exchanged in Berlin on November 11th, and the President of the United States proclaimed peace on November 12, 1921.

Mr. Pokorny evidently wanted the employment agreement to run until his return from the war. The fact that he returned before the close of the war has nothing to do with the construction to be put upon the agreement. The question of when the war closed is not a judicial one but one to be determined by the political department of the government. *Conley* v. *Supervisors of Calhoun County*, 2 W. Va. 416.

We said in *Kneeland-Bigelow Co.* v. *Railroad Co.,* 207 Mich. 546, that:

"War having been declared, that condition must be recognized by the courts as existent until the duly constituted national power of the country officially declares to the contrary, even though actual warfare has long since ceased."

The armistice did not end the war; it terminated hostilities.

We are of the opinion that Mr. Pokorny wanted to be sure of his return from the war before the lease was executed, and that accounts for the peculiar language employed in the agreement. That this is true is made manifest in another part of the agreement, viz:

"At the expiration of above named period of one year after the close of said war, said first parties, if so requested by said second party, agree that said second party, or a corporation to be formed by said second party for that purpose, shall have a written lease of said hotel for the balance of above named fifteen years."

Plaintiff contends that the agreement also provides he may have a lease at any time. Plaintiff filed a bill for specific performance previous to this one but the same was dismissed as prematurely filed. The decision of Judge Dingeman in dismissing the first bill as one prematurely filed covered, adversely to plaintiff, the point now made that under the fifth paragraph of the agreement plaintiff was entitled to a lease at any time. The record shows that Judge Dingeman passed upon such question and plaintiff should, if not content, have appealed from that decree. By not appealing the determination there made must be treated as *res adjudicata.*

While the case must be dismissed for the reason stated, yet, inasmuch as there has been a full hearing and the rights of the parties have been argued, we

217 Mich.—19.

deem it proper to express our opinion upon the question of whether specific performance of the contract can be decreed, as this will save the parties useless future expense. The contract is one incapable of division and must, if enforced by specific performance, be decreed to be carried out in its entirety. We pass the question of the power of the court to decree the form of chattel mortgage to be executed. We find the following indivisible part of the contract so indefinite as to prevent us from charting in a decree the rights, duties and obligations of the parties thereunder.

Paragraph 7 of the contract reads:

"Said first parties agree, within two years after the date of the above named war (determined as above mentioned), to begin the erection upon the vacant lot now owned by them, and adjacent to and just west of said Berkshire hotel, a building suitable to join with said Berkshire hotel, and one that can be operated as a hotel, at a minimum cost, in conjunction with said Berkshire hotel, and lease the same to said second party, or to a corporation to be formed by said second party, for that purpose, for the unexpired portion of above named fifteen years, at an annual net rental figured upon the basis of six (6) per cent. on $30,000, the agreed ground valuation of said vacant lot, and ten (10) per cent. upon the total cost of said new building; said second party, or said corporation, in addition to said annual rental, to pay all taxes, insurance, and necessary repairs upon the same. Said building to be erected according to the State and city building codes, and the ordinances of the city of Detroit."

The decree below makes no mention of this part of the contract, but it cannot be separated from the rest of the contract and ignored, for plaintiff must take all of the contract with its accompanying obligations if defendants are decreed to make specific performance thereof.

Under this contract what must defendants build? Turning to the contract for the answer we find that defendants are to construct "a building suitable to join with said Berkshire hotel, and one that can be operated as a hotel, at a minimum cost, in conjunction with said Berkshire hotel, * · * * said building to be erected according to the State and city building codes, and the ordinances of the city of Detroit."

What must plaintiff be suited with? Will plaintiff accept what defendants build, and can we by decree bind him now to do. so? Not knowing what may be built and having nothing from which we can say just what the defendants must build, how are we to fix the mutuality of obligation of the parties? It is elementary that the contract, to be enforced, must be certain as to plaintiff's duty, since the decree affects plaintiff as well as defendants and requires performance on the part of both parties to the contract.

Suppose plaintiff refuses to accept the new building, when constructed, on the grounds that it does not comply with the contract and cannot be operated as a hotel at a minimum cost in conjunction with the Berkshire hotel, and is not a building suitable to join with the Berkshire hotel, and in fact not such a building as the contract calls for? We can neither say now, nor later, what the plaintiff must be satisfied with, and, therefore, if we order the thing to be done it will be a question incapable of solution later whether plaintiff must accept the new building.

The rights, obligations and duties of the parties must be fixed in the decree once for all, and under the contract this cannot be done. We ought not to put defendants to the expense of providing something that may not be accepted by the plaintiff, and we cannot from the contract itself determine at this time what defendants must build and plaintiff must accept. Under this contract we cannot by decree, at this time,

foreclose the plaintiff from later on raising the question of whether the building, when erected, complies with the contract.

"The court will not grant specific performance to plaintiff and at the same time leave defendant to the legal remedy of damages for possible future breaches of the contract on plaintiff's part." 36 Cyc. p. 622.

The parties themselves have not delineated or indicated in the contract the essentials necessary to enable the court to carry into execution the things to be performed. We must, therefore, hold that the plaintiff is not entitled to have specific performance of the contract.

The bill is dismissed, with costs to defendants.

STONE, CLARK, BIRD, SHARPE, MOORE, and STEERE, JJ., concurred. FELLOWS, C. J., did not sit.