[L. A. No. 15439. In Bank.—June 19, 1936.]

FORD M. KAISER, Respondent, v. ED. W. HOPKINS, Assessor, etc., Appellant.

Everett W. Mattoon, County Counsel, and Gordon Boller, Deputy County Counsel, for Appellant.

Roy C. Kaiser for Respondent.

THE COURT.—We granted a hearing in this case after decision by the District Court of Appeal, Second District, Division Two, because the decision of the appellate court was in conflict with the decision of another appellate district in *Dooley* v. *Johnson*, 133 Cal. App. 459 [24 Pac. (2d) 540]. In said case a petition for hearing in this court was not filed. After careful consideration we are of the view that the opinion of the District Court of Appeal in the instant case, written by Mr. Justice Wood, contains a correct statement of the law, and we therefore adopt said opinion as our decision. It follows:

"Plaintiff petitioned the superior court for a writ of mandate to compel the defendant, assessor of Los Angeles county, to grant him exemption from taxation in accordance with the provisions of the state Constitution, wherein it is declared that 'the property to the amount of $1,000 of every resident of this state who has served in the army, navy, marine corps or revenue marine service of the United States in time of war and received an honorable discharge therefrom . . . shall be exempt from taxation'. (Art. XIII, sec. 1¼.) Plaintiff served in the United States army from May 13, 1919, to May 12, 1922. Defendant appeals from a judgment in plaintiff's favor. The sole question for determination in the proceeding is whether a soldier who enlisted and served after the armistice of November 11, 1918, is entitled to the exemption provided for those who served 'in time of war'.

"It is a general rule of statutory construction that the courts will interpret a measure adopted by vote of the people in such manner as to give effect to the intent of the voters adopting it. (Cooley on Constitutional Limitations, [5th ed.], sec. 66.) It must be held that the voters judged of the amendment they were adopting by the meaning apparent on its face according to the general use of the words employed. Such is the rule where it does not appear that the words were used in a technical sense. (*Miller* v. *Dunn*, 72 Cal. 462 [14 Pac. 27, 1 Am. St. Rep. 67].) 'Where a word having a technical as well as a popular meaning is used in the Constitution, the courts will accord to it its popular signification, unless the very nature of the subject indicates,

or the context suggests, that it is used in its technical sense.' The words used in a constitution 'must be taken in the ordinary and common acceptation, because they are presumed to have been so understood by the framers and by the people who adopted it'. (*Miller* v. *Dunn, supra; City of Pasadena* v. *Railroad Commission of California,* 183 Cal. 526 [192 Pac. 25, 10 A. L. R. 1425] ; *San Pedro etc. R. R. Co.* v. *Hamilton,* 161 Cal. 610 [119 Pac. 1073, 37 L. R. A. (N. S.) 686] ; *Weill* v. *Kenfield,* 54 Cal. 111; *Sprague* v. *Norway,* 31 Cal. 174.)

 ''When the armistice was effected on November 11, 1918, the conflict between the United States and Germany-Austria came to an end. All the war activities ceased, never to be renewed. It is true, as argued by plaintiff, that we were technically at war until July 2, 1921, during which time the peace commissioners negotiated the final terms of settlement, but in the minds of the people the war was over. A spirit of rejoicing swept the land, business cares were laid aside, people danced in the street and engaged in numerous impromptu celebrations. The young men of the nation were recalled from war, from the battlefields where their lives had been endangered. In commemoration of the ending of the great war the day of the armistice was established as a legal holiday. When at a later date the people, in appreciation of the great sacrifices made by the soldiers in leaving their homes and occupations to suffer the privations and dangers of war, amended the Constitution to grant them certain tax exemptions, they doubtless did so to reward those who served in time of actual war and not those who served in time of actual peace, to reward war service and not peace service. Application of the rules above set forth to the present situation leads to the inevitable conclusion that the voters used the words in question in their 'ordinary and common acceptation', and that they intended to exempt those only who had served during the period of actual conflict.

''Our views are in accord with a decision of the supreme court of Massachusetts, where a case very similar to the one before us was considered. In that case the petitioner sought by writ of mandate to compel the granting of certain privileges under a statute which allowed the privileges to any person who had served 'in time of war'. In that case,

as in our own, petitioner joined the army after the armistice. In denying the petition the court said: 'When the armistice was signed it was generally recognized that the war had come to an end. It was so considered by the President of the United States who, on November 11, 1918, addressing the two Houses of Congress in joint assembly under the provisions of the Constitution, stated "The war thus comes to an end; for, having accepted these terms of armistice, it will be impossible for the German command to renew it." ' (*Scott* v. *Commissioner of Civil Service*, 272 Mass. 237 [172 N. E. 218].)

■ ''The state legislature, in making provision for carrying into effect the constitutional exemption referred to, in 1929 enacted a law by which the words 'in time of war' were given legislative interpretation. In section 3612 of the Political Code it is provided: 'The following are recognized as wars within the intent and meaning of said section of the constitution: . . . War with Germany-Austria, April 6, 1917, to and including November 11, 1918.' Where two constructions can be placed upon a constitutional amendment and the legislature has enacted a law placing a reasonable construction upon the amendment, the courts will ordinarily follow the legislative construction. In *San Francisco* v. *Industrial Acc. Com.*, 183 Cal. 273 [191 Pac. 26], the court said: 'In such a situation, where a constitutional provision may well have either of two meanings, it is a fundamental rule of constitutional construction that, if the legislature has by statute adopted one, its action in this respect is well nigh, if not completely, controlling. When the legislature has once construed the constitution, for the courts then to place a different construction upon it means that they must declare void the action of the legislature. It is no small matter for one branch of the government to annul the formal exercise by another and co-ordinate branch of power committed to the latter, and the courts should not and must not annul, as contrary to the constitution, a statute passed by the legislature, unless it can be said of the statute that it positively and certainly is opposed to the constitution. This is elementary. But plainly this cannot be said of a statute which merely adopts one of two reasonable and possible constructions of the constitution. . . . '

"Plaintiff contends that the legislative enactment, Political Code section 3612, subdivision 4(u), by which the war period is limited to the date of the armistice, is in violation of the fourteenth amendment to the Constitution of the United States, in that (as alleged) it denies the equal protection of the laws, and that the enactment in question violates the section of the Constitution of California which provides that 'all laws of a general nature shall have a uniform operation'. In our opinion the legislative enactment does not violate either of these constitutional provisions. The legislature merely placed a construction upon the language used by the people in amending the Constitution. By such construction it is held that the people granted certain exemptions to all members of a large group who served the nation in time of conflict and that in such group those are not included who served in the army after the conflict had ceased. (*Merchants' & Manufacturers' National Bank* v. *Pennsylvania*, 167 U. S. 461, 464 [17 Sup. Ct. 829, 42 L. Ed. 236]; *San Francisco* v. *McGovern*, 28 Cal. App. 491 [152 Pac. 980]; 61 Cor. Jur., secs. 383-4, p. 385.)"

The judgment is reversed.