### 15923

GREENVILLE ENTERPRISE, INC., *ET AL.* v. JENNINGS, CHIEF OF POLICE OF CITY OF GREENVILLE *ET AL.*

(41 S. E. (2d), 868)

164

*Messrs. Wyche, Burgess & Wofford,* of Greenville, for Appellants, cite:

*Messrs. A. C. Mann* and *Benj. A. Bolt,* of Greenville, for Respondents, cite:

*Messrs. Carlisle, Brown & Carlisle,* of Spartanburg, for South Carolina Federated Forces for Temperance and Law Enforcement, *Amicus Curiae,* cite:

March 10, 1947.

TAYLOR, AJ.: This action was commenced in the Court of Common Pleas for Greenville County, South Carolina, on the 25th day of May, 1946. The Honorable J. Robert Martin, Jr., issued a temporary restraining Order and Rule to Show Cause why a permanent injunction should not be granted enjoining respondents from prohibiting or interferring with petitioners in the exhibition of motion pictures or baseball games in the City of Greenville. After hearing the case on its merits, the Court filed its Order on June 1, 1946, revoking the temporary restraining Order and refusing the permanent injunction, and dismissed the petition. Notice of intention to appeal was duly given and a writ of supersedeas granted the petitioner Greenville Baseball, Inc., which exhibits baseball

games; but such was refused Greenville Enterprises, Inc., and Paris Theatre Company, which operate motion picture houses in the City of Greenville, upon the ground "That the exhibition of motion pictures on Sunday rests finally in the control of the City Council".

By consent of counsel the Court filed on June 7, 1946, its supplemental Order setting forth its reasons for refusing to grant the relief prayed for, and petitioners now appeal to this Court upon three exceptions which raise but one issue, to wit: Whether or not the Court erred in refusing to grant the relief prayed for upon the ground that the Act of the General Assembly of South Carolina, approved May 1, 1941, as amended by an Act of the General Assembly April 7, 1943, had expired according to its own terms and is no longer in full force and effect.

The Act, as amended in 1943, reads as follows (omitting title):

"SECTION 1: SEC. 1737-1, 1942 Code, AMENDED —TIME LIMITATION OMITTED ON PUBLIC EXHIBITION OF MOTION PICTURES, ATHLETIC SPORTS AND MUSICAL CONCERTS ON SUNDAYS.—That Section 1737-1, Code of Laws of South Carolina, 1942, be, and the same is hereby, amended, by striking out the words 'For a period of two years after May 23, 1941,' at the beginning of said section, so that said section, then amended, shall read as follows:

"Section 1737-1. It shall be lawful to exhibit publicly motion pictures, athletic sports and musical concerts and to engage therein from and after two p. m. on Sunday in counties wherein the United States government has established and maintains permanent or temporary army forts, naval or marine bases and/or incorporated cities or towns within a fifteen-mile radius of said permanent or temporary army forts, naval or marine bases, PROVIDED, That the exhibition of such motion pictures and engagements in athletic sports is lawful on other week days: PROVIDED,

HOWEVER, that the theatre operator shall first obtain from the town or city council a special permit to run his theatre on Sunday. The terms of this section shall in no way conflict with any Sunday evening church sevice. PROVIDED, That outside of incorporated towns or cities the approval of the County Board of Commissioners or Directors shall be necessary. And PROVIDED FURTHER, that any person or persons, firm or corporation, exhibiting public motion pictues, athletic sports or musical concerts in any other county in South Carolina than said counties where the United States government has established and maintains permanent or temporary army forts, naval or marine bases, shall, upon conviction, be deemed guilty of a misdemeanor, and be subject to a fine not to exceed One Hundred Dollars, or imprisonment not to exceed thirty days in the discretion of the Magistrates.

"SECTION 2: REPEAL.—All Acts or parts of Acts inconsistent herewith are hereby repealed.

"SECTION 3: DURATION—This Act shall expire six months after the present war has ended.

"SECTION 4: TIME EFFECTIVE.—This Act shall take effect upon its approval by the Governor.

"Approved the 17th day of April, 1943."

All rules for statutory construction are servient to the one that the legislative intent must prevail if it can be reasonably discovered in the language used, and must be construed in the light of the intended purpose. The language used should be given its ordinary meaning; that is, the words used should be given their generally accepted meaning. *Ex Parte Savannah River Electric Company,* 169 S. C. 198, 168 S. E. 554; *Crawford v. Stevens,* 173 S. C. 149, 175 S. E. 213; *Windham v. Pace et al.,* 192 S. C. 271, 6 S. E. (2d) 270.

Stated in other words, the question to be decided by this Court is, When does this law end according to its terms as

reflected by the intention of the South Carolina General Assembly?

It is evident that the Act was passed for the benefit and use of military personnel and not for the general public because if it had, it would have been made applicable to the entire State and not just to communities where the government had established and maintained permanent or temporary army forts, or naval or maine bases. It is also significant that at the time of the passage of this statute, the United States was not at war, and the Act passed in 1941 fixed definite period of time for its continuance without any regard to any act or acts of the United States government and without regard to the existence or non-existence of a state of war, but rather provided "for a period of two years after the effective date of this Act", etc. Had this Act not been amended, it would have expired according to its own terms on May 23, 1943, the Act, having become effective May 23, 1941. However, war was not declared until the following December of that year.

Approximately one month prior to the expiration date of this Act, the General Assembly amended it in such a way that three things are provided which were not in the old Act:

1. In its caption states "Time limitation omitted on public exhibition of motion pictures, athletic sports and musical concerts on Sunday".

2. Strikes out the words "for a period of two years after May 23, 1941", and

3. Adds a section entitled "Duration", which reads as follows: "This Act shall expire six months after the present war has ended".

Respondents contend that the words "six months after the present war has ended" in effect means "six months after the cessation of hostilities" and more than six months having elapsed since the surrender of Germany and Japan,

the Act has expired under its own terms. Article 1, Section 8 of the Constitution provides, "The Congress shall have power to declare war, grant letters of marque and reprisal, and make rules concerning captures on Land and Water". *West v. Palmetto State Life Insurance Co.*, 202 S. C. 422, 25 S. E. (2d) 475. In 67 C. J. 336, quoted with approval in the *West case, supra,* we find the following:

"The Courts are bound by a declaration or determination by the proper department of government that a war exists, while until there has been such a declaration or determination the Courts cannot take judicial notice of the existence of a war by their government."

Very pointed is the following from the same volume, page 338:

"A court cannot, however, take judicial notice of a war by its government until there has been some act or declaration creating or recognizing the existence of war by the department of the government clothed with the war-making power."

*In re Miller,* 281 Fed. 764, we find the following:

"We are unable to assent to the proposition. It is difficult to appreciate the reasoning upon which it is based. So long as the United States was officially at war, the courts cannot say that it was in reality at peace. The joint resolution of Congress adopted July 2, 1921, declared the war at an end. 42 Stat. 105. And on November 11, 1921, the President issued his proclamation in which he declared 'that the war between the United States and Germany terminated on July 2, 1921'. Under the definition of 'end of the war', continued in the Trading with the Enemy Act, July 2, 1921, must be regarded for the purposes of that statute as the termination of the war."

In the case of *Hamilton v. Kentucky Distilleries,* 251 U. S. 146, 40 Sup. Ct. 106, the court had under consideration the War Time Prohibition Act. The Armistice with Ger-

many was signed November 11, 1918. Thereafter Congress passed, and on November 21, 1918, the President approved, the War Time Act (40 Stat. 1045, 1046 c 212) which provided that until "conclusion of the present war * * * it shall be unlawful to sell for beverage purposes any distilled spirits and during said time no distilled spirits held in bond shall be removed therefrom for beverage purposes except for export. * * *"

At page 109 of the Supreme Court Reporter Mr. Justice Brandeis, speaking for the Court, says:

"Second. Did the Act become void by the passing of the war emergency before the commencement of these suits? It is conceded that the mere cessation of hostilities under the armistice did not abridge or suspend the power of Congress to resort to prohibition of the liquor traffic as a means of increasing our war efficiency, that the support and care of the army and navy during demobilization was within the war emergency, and that, hence, the act was valid when passed. The contention is that between the date of its enactment and the commencement of these suits it had become evident that hostilities would not be resumed, that demobilization had been effected, that thereby the war emergency was removed, and that when the emergency ceased the statute became void."

The court then goes on to conclude that the war did not end until so declared by Congress.

In *Kneeland-Bigelow Co. v. Michigan Central Railroad,* 207 Mich. 546, 174 N. W. 605, 608, we find the following:

"In the legislative branch of the government Congress passed a resolution declaratory of war and laws for the efficient conduct of the same, while the President as chief executive of the nation issued authorized proclamations and orders deemed by him essential to the execution of such laws. Within the scope of these two sovereign departments of our government, the action of Congress in passing laws and of the Executive in their administration are not to be

questioned by the judicial department, federal or state. The existence of war and restoration of peace are determined by action of the legislature, supplemented by the executive department of government. Such determination is binding and conclusive on the courts. War having been declared that condition must be recognized by the courts as existent until the duly constituted national power of the country officially declares to the contrary, even though actual warfare has long since ceased."

In the case of. *Palmer v. Pokorny et al.*, 217 Mich. 284, 186 N. W. 505, the Supreme Court of Michigan cites with approval the *Kneeland case, supra*. The *Palmer case* involves an agreement which provided that at the expiration of one year after the close of the war (World War I) plaintiff should have the right to lease from defendant a certain hotel. In construing what the parties meant by the words "close of the war" the Court said:

"Mr. Pokorny evidently wanted the employment agreement to run until his return from the war. The fact that he returned before the close of the war has nothing to do with the construction to be put upon the agreement. The question of when the war closed is not a judicial one, but one to be determined by the political department of the government. *Conley et al. v. Supervisors of Calhoun County*, 2 W. Va. 416."

It is clear, therefore, that the declaration by Congress of war on Japan on December 8, 1941, was the only way in which this country could be placed in a state of war. *West v. Palmetto State Life Insurance Co., supra*. Since a formal declaration is necessary to commence a war, a *fortiori* the same solemn determination would be required to terminate a state of war which had been declared to exist. The Act of April, 1943, was changed to read "six months after the present war has ended", after Congress had declared war to exist. It contemplated that the Congress would fix its expiration date by a formal declaration of the end of war.

It is of interest to note that subsequent to the commencement of this action and prior to the hearing on appeal before this Court, the following Proclamation was issued by the President of the United States (omitting heading) :

"With God's help this Nation and our allies , through sacrifice and devotion, courage and perseverance, wrung final and unconditional surrender from our enemies. Thereafter, we together with the other United Nations, set about building a world in which justice shall replace force—with spirit, through faith, with determination that there shall be no more wars of aggression calculated to enslave the peoples of the world and destroy their civilization, and with the guidance of Almighty Providence great gains have been made in translating military victory into permanent peace. Although a *state of war still exists,* it is at this time possible to declare, and I find it to be in the public interest to declare, that hostilities have terminated.

"Now, therefore, I, Harry S. Truman, President of the United States, do hereby proclaim cessation of hostilities of World War II, effective 12 o'clock Noon, December 31, 1946.

"In Witness Whereof, I hereunto set my hand and caused the seal of the United States of America to be affixed.

"Done at the City of Washington this 31 day of December in the year of our Lord nineteen hundred and forty-six, and of the independence of the United States of America, the one hundred seventy-first.

HARRY S. TRUMAN

"By the President:

"James F. Byrnes,

"The Secretary of State."

The Legislature changed the definite, exact and independent date of expiration of the old statute and correlated the state law with national legislation in providing that it should terminate six months after the end of the war which had

been declared by the United States, and it is the opinion of this Court that it did so with the intent to coordinate its efforts with that of the Federal government. It therefore follows that petitioners are entitled to the relief sought and the judgment of the lower Court should be reversed; and it is so ordered.

Judgment reversed.

BAKER, CJ., and FISHBURNE, STUKES and OXNER, JJ., concur.