## NEW YORK LIFE INS. CO. v. DURHAM.
### No. 3564.

Circuit Court of Appeals, Tenth Circuit.

March 4, 1948.

George A. Critchlow, of Salt Lake City, Utah (Walter M. Critchlow, of Salt Lake City, Utah and Ronald B. Swinford and Harry J. McCallion, both of New York City, on the brief), for appellant.

Harold Cline, of Milford, Utah (Albert M. Marsden, of Parawan, Utah and Elias Hansen, of Salt Lake City, Utah, on the brief), for appellees.

Before PHILLIPS, BRATTON and MURRAH, Circuit Judges.

MURRAH, Circuit Judge.

On December 1, 1943, the New York Life Insurance Company issued its policy of insurance on the life of Lewis Durham in the sum of $5,234.00, conditioned that the amount payable should be the restricted amount (as therein defined) if the death of insured should occur "outside the home areas while the insured is in the military or naval forces of any country engaged in war. * * * 'war' includes undeclared war."

On September 25, 1945, while the policy was in full force and effect, and insured was in the military forces of the United States, he died outside the home areas from wholly non-military causes. The Insurance Company tendered the restricted amount in the sum of $233.92, but denied liability for the face amount of the policy on the grounds that when death occurred the insured was outside the home areas in the military forces of a "country engaged in war".

In this suit by the beneficiary to recover the face amount of the policy, the sole question is whether on September 25, 1945, after the surrender of the Germans and Japanese this country was engaged in war. The Trial Court gave judgment for the beneficiary and the Insurance Company has appealed.

The facts are not in dispute. On the date of insured's death all of the enemies of the United States in World War Two, had unconditionally surrendered, but there had been no declaration, proclamation or official act of the executive or legislative departments of the Government declaring, proclaiming, or otherwise announcing the formal termination of the existence of a state of war. On the contrary, it was not until December 31, 1946, that the president of the United States publicly stated: "Although a state of war still exists, it is at this time possible to declare, and I find it in the public interest to declare, that hostilities have terminated". 12 Fed.Reg. 1.

This being true, it is contended that whether on September 25, 1945, the United States was a country engaged in war, is a political question solely for the determination of the political departments of our Government. And, there having been a political determination that the country was engaged in war, the Courts are conclusively bound by that determination until the political departments of our Government officially declare that the country no longer is engaged in war. In that connection, we are reminded that the exempting clause of the insurance contract is a "status clause" and not a "result clause", according to which coverage under the policy depends not upon the cause of death, but upon the status of the country when death occurred.

Of course, Courts do not declare war or make peace. The existence of war and restoration of peace are determined solely by the political departments of our Government, and such determinations are conclusively binding upon the Courts in all matters of state or public concern, and war having been declared, its existence must be recognized by the Courts until peace is proclaimed, although actual warfare may have ceased. Hamilton v. Kentucky Distilleries Co., 251 U.S. 146, 40 S. Ct. 106, 64 L.Ed. 194; Hijo v. United States, 194 U.S. 315, 24 S.Ct. 727, 48 L.Ed. 994; Palmer v. Pokorny, 217 Mich. 284, 186 N.W. 505; Kneeland-Bigelow Co. v. Michigan Cent. R. Co., 207 Mich. 546, 174 N.W. 605. In deciding judicial questions concerning the commencement or termination of a state of war, the Courts are generally required to refer to some public act of the political departments of the Government. See The Protector, 79 U.S. 700, 12 Wall. 700, 20 L.Ed. 463; United States v. Anderson, 76 U.S. 56, 9 Wall. 56, 19 L.Ed.

615. Furthermore, private rights, when affected by the incidence of war, are governed by such political determinations and the Courts will usually condition private rights, whether resting in contract or otherwise, in order to give full effect to the exigencies of war. See Hamilton v. Kentucky Distilleries Co., supra; United States ex rel. Hack v. Clark, 7 Cir., 159 F.2d 552; Citizens Protective League v. Clark, 81 App. D.C. 116, 155 F.2d 290; Woods v. Cloyd W. Miller Co., 68 S.Ct. 421. But in all private matters, unaffected by public interest, the parties are undoubtedly free to contract with reference to war and to give it such definition, connotation and meaning, as does not infringe upon public policy. See Hoover v. Sandifur, 25 Wash.2d 791, 171 P. 2d 1009, 168 A.L.R. 170; Colonial Hotels v. Maynard, Fla., 29 So.2d 28; Rupp Hotel Operating Co. v. Donn, Fla., 29 So.2d 441. See cases collected in Annotation 168 A.L. R. 685.

■ In our case it is undeniably true that the parties were free to contract with reference to a "country engaged in war", as a measure of liability, and the Courts certainly have the right and duty to construe that term according to the manifest intent of the parties. Thus, in New York Life Ins. Co. v. Bennion, 10 Cir., 158 F.2d 260, while recognizing that the existence of a state of war was a political question to be determined solely by the political departments, we were nonetheless of the opinion that the political determination of the commencement of war was immaterial if the parties to the private contract, clearly intended that war should have a different meaning. When the contract was viewed in its context and the manifest intent of the parties ascertained, we were of the opinion that they contracted with reference to war in its real and practical sense; that is, its hazards to human life, and that the Courts were not required to "affect a technical ignorance" of actualities. See also Prize Cases, 2 Black 635, 17 L.Ed. 459. We accordingly held that the attack on Pearl Harbor, before the formal declaration of war was "war or an act incident thereto" within the meaning of the insurance contract, which used those exclusionary words.

See Stinson v. New York Life Ins. Co., D.C., 69 F.Supp. 860.

■ The parties in this case, as in the Bennion case, contracted with reference to a risk assumed for a premium paid. When they came to express the limitations upon the risk assumed, they obviously had in mind the extraordinary risk incident to service in the military forces of any country engaged in war, declared or undeclared. By including undeclared war, they chose not to use the word "war" in its technical or formal sense, but rather in the practical and realistic sense in which it is commonly used and understood—in the sense it bears to the hazards to human life. The parties clearly contemplated that the country might be engaged in an undeclared war, without political determination or formal recognition thereof, yet the Courts would be required to take cognizance of its existence by an appraisal of actualities in order to give legal effect to the insurance contract.

■ The simple question then is, whether when death occurred the United States was engaged in war, as that term is ordinarily understood and accepted, and in the relationship it bears to the risk assumed. True, the parties contracted with reference to a "status" and not a "cause". The very statement of the question precludes any other considerations, but that does not mean we are prevented from giving the words "engaged in war" the meaning and connotation they bear to the subject matter of the contract.

If the insured had died from non-military causes outside the home areas after the Pearl Harbor attack but before the formal declaration of war, we should have no difficulty in concluding that when death occurred he was in the military service of a "country engaged in war" within the meaning of the policy. Conversely, we have no difficulty in holding that since death of the insured occurred after the surrender of our enemies, he was not in the service of a "country engaged in war", as those words were used to measure coverage in the insurance contract.

The judgment is affirmed.