ALWINE MEIER, APPELLANT, v. CAROLINE SCHMIDT, APPELLEE.

34 N. W. 2d 400

Filed November 15, 1948. No. 32462.

 

*W. A. Stewart, Jr.* and *Thomas & Cattle,* for appellant.

*Carr & Hoagland* and *York & York,* for appellee.

Heard before PAINE, CARTER, MESSMORE, YEAGER, CHAPPELL, and WENKE, JJ.

CARTER, J.

This is an action on a promissory note. The defendant died after the action was commenced and plaintiff applied for an order reviving the action against the personal representative of the deceased defendant. The trial court refused to revive the action and the plaintiff appeals.

The petition shows that one Gottlieb Niemann was the owner of certain lands in Seward County, Nebraska, on and after May 1889. In 1901 he removed to Germany, his former home. Upon the entry of the United States into World War I, Niemann thereby becoming an enemy alien, the Alien Property Custodian took possession of said lands and retained them until November 23, 1928, at which time he conveyed them to Caroline Schmidt for $27,000 pursuant to the Trading with the Enemy Act and certain executive orders issued pursuant thereto. In part settlement of the purchase price Caroline Schmidt executed and delivered her note to Gottlieb Niemann in the amount of $18,420.85, due on February 8, 1934. On December 20, 1934, Niemann assigned and delivered the note to the plaintiff. This action was commenced and service of summons personally had upon Caroline Schmidt on February 6, 1939. On April 1, 1942, an answer in the form of a general denial was filed. On July 1, 1947, plaintiff filed a motion for revivor, alleging that the defendant Caroline Schmidt died testate on January 28, 1947, and praying that the action be revived in the name of John A. Streiff, Executor of the Estate of

Caroline Schmidt, Deceased. The executor filed what is denominated a special appearance in which he asserts that plaintiff is a nonresident enemy alien of the United States, that as a nonresident German national she has no right to property within this country during the period that a state of war exists between the United States and Germany, that plaintiff failed to secure permission from the United States government through the office of the Alien Property Custodian to maintain this action, and that the court does not have jurisdiction. The trial court thereafter entered an order in which it is stated "that this action be and the same is not revived at this time, and the cause of action therein is not revived as against said administrator for the reason that said action cannot be litigated until the termination of the war." The correctness of this ruling is challenged by the present appeal.

The petition shows that the case was commenced on February 6, 1939. We take judicial notice of the fact that Germany declared war on the United States on December 11, 1941. Consequently the action was properly commenced by the plaintiff as a nonresident alien. It was not until December 11, 1941, that plaintiff became an enemy alien. Did the court lose jurisdiction of the case at the time plaintiff became an enemy alien? If not, was defendant entitled to have all proceedings stayed during the period of the war?

On December 8, 1923, the United States entered into a treaty with Germany which provided: "Nationals of either High Contracting Party may have full power to dispose of their personal property of every kind within the territories of the other, by testament, donation, or otherwise, and their heirs, legatees and donees, of whatsoever nationality, whether resident or non-resident, shall succeed to such personal property, and may take possession thereof, either by themselves or by others acting for them, and retain or dispose of the same at their pleasure subject to the payment of such duties or charges

only as the nationals of the High Contracting Party within whose territories such property may be or belong shall be liable to pay in like cases." Treaty with Germany of December 8, 1923, art. IV, 44 Stat. at L. 2135.

"The nationals of each High Contracting Party shall enjoy freedom of access to the courts of justice of the other on conforming to the local laws, as well for the prosecution as for the defense of their rights, and in all degrees of jurisdiction established by law.

"The nationals of each High Contracting Party shall receive within the territories of the other, upon submitting to conditions imposed upon its nationals, the most constant protection and security for their persons and property, and shall enjoy in this respect that degree of protection that is required by international law. Their property shall not be taken without due process of law and without payment of just compensation." Treaty with Germany of December 8, 1923, art. I, 44 Stat. at L. 2133.

Treaties made by the United States are specifically designated in Article 6 of the Constitution of the United States as "the supreme Law of the Land; and the Judges in every State shall be bound thereby, any Thing in the Constitution or Laws of any State to the Contrary notwithstanding." Treaty provisions which require no legislation to make them operative are self-executing and they will be enforced in accordance with their plain meaning. It is fundamental that if the provisions of a treaty have not been superseded or abrogated, ordinarily no basis exists for their nonenforcement.

It is asserted in the present case that the formal commencement of hostilities between the United States and Germany on December 11, 1941, constituted an abrogation of the treaty insofar as it applied to the present case. But the outbreak of war between the signatories to a treaty does not necessarily suspend or abrogate treaty provisions. Where there is such incompatibility between a particular treaty provision and the maintenance of a

state of war as to make it clear that the treaty provision should not be enforced, the treaty provision will not be given effect. Karnuth v. United States, 279 U. S. 231, 49 S. Ct. 274, 73 L. Ed. 677. Also, the Chief Executive or Congress may have formulated a national policy inconsistent with the enforcment of the treaty in whole or in part. Techt v. Hughes, 229 N. Y. 222, 128 N. E. 185, 11 A. L. R. 166. But unless one of the foregoing events occurs, even though war still exists and the intentions of the political departments of the government remain unrevealed, the courts are required to give effect to the provisions of the treaty. The general rule is that treaties which are reasonably practicable to execute after the outbreak of hostilities must be given effect. They may be disregarded only to the extent and for the time required by the necessities of war, or when they conflict with policies established by the Chief Executive or the Congress. Techt v. Hughes, *supra*, cited with approval in Clark v. Allen, 331 U. S. 503, 67 S. Ct. 1431, 91 L. Ed. 1633, 170 A. L. R. 953.

It is here contended that the Trading with the Enemy Act suspends or abrogates the applicable portions of the treaty. The applicable provision of the act provides: "Nothing in this Act shall be deemed to authorize the prosecution of any suit or action at law or in equity in any court within the United States by an enemy or ally of enemy prior to the end of the war, except as provided in section ten hereof: * * * And provided further, That an enemy or ally of enemy may defend by counsel any suit in equity or action at law which may be brought against him." Trading with the Enemy Act, 50 U. S. C. A. § 7 (b).

In Caperton v. Bowyer, 81 U. S. 216, 14 Wall. 216, 20 L. Ed. 882, it was said: "Enemy creditors cannot prosecute their claims subsequent to the commencement of hostilities, as the rule is universal and peremptory that they are totally incapable of sustaining any action in the tribunals of the other belligerent. Absolute suspension

of the right to sue and prohibition to exercise it exist during war, by the law of nations, * * *." In the recent case of Ex Parte Colonna, 314 U. S. 510, 62 S. Ct. 373, 86 L. Ed. 379, this holding was reaffirmed in the following language: "This provision was inserted in the Act in the light of the principle, recognized by Congress and by this Court, that war suspends the right of enemy plaintiffs to prosecute actions in our courts."

In Wirtele v. Grand Lodge, 111 Neb. 302, 196 N. W. 510, this court held that plaintiff was an enemy alien under the Trading with the Enemy Act and could not therefore, so long as the war continued, resort to the courts of this country as plaintiff. See, also, In re Estate of Thiede, 102 Neb. 747, 169 N. W. 435.

It is plain, therefore, that the wording of the act bars a nonresident enemy alien from instituting an action during the continuance of the war or prosecuting an action instituted before its commencement. Taylor v. Albion Lumber Co., 176 Cal. 347, 168 P. 348, L. R. A. 1918B 185.

The purpose of the Trading with the Enemy Act is to prohibit and prevent the lending of aid and comfort to the enemy by frustrating the enemy's attempt to garner sinews of war. Confiscation of property is not the objective. It is not the purpose of the act to deprive the courts of jurisdiction in this type of case. It merely declares that nonresident enemy aliens may not commence litigation in the courts during the war period or prosecute a case during such period which was commenced prior to the beginning of the war. Consequently the trial court acted correctly in retaining jurisdiction of the case and staying further proceedings until the termination of the war.

The courts will take judicial notice of the fact that the war with Germany has not officially ended. The Trading with the Enemy Act therefore remains a bar to the prosecution of the action until that event occurs. The Michigan court aptly stated the reasons for the conclusion in the following language: "The existence of

war and restoration of peace are determined by action of the legislative, supplemented by the executive, department of government. Such determination is conclusive and binding upon the courts. War having been declared, that condition must be recognized by the courts as existent until the duly constituted national power of the country officially declares to the contrary, even though actual warfare has long since ceased." Kneeland-Bigelow Co. v. Michigan C. R. R. Co., 207 Mich. 546, 174 N. W. 605.

The judgment of the district court is in accordance with the foregoing holdings and is affirmed.

AFFIRMED.

SIMMONS, C. J., participating on briefs.