J. H. DARNALL, Appellee, v. CLIFF L. DAY et ux., Appellants.

No. 47417.

(Reported in 37 N. W. 2d 277)

666

Watson & Herrick, of Indianola, for appellants.

Hall & Ewalt, of Indianola, for appellee.

GARFIELD, J.—On February 2, 1945, defendants, owners of a store building in Indianola, leased it in writing to Butler Brothers of Chicago for one year commencing March 1, 1945, with an option to the tenant to extend the term nine more years by a single extension therefor or by nine successive extensions for one year. On July 2, 1945, Butler Brothers, with defendants' consent, assigned the lease to plaintiff, J. H. Darnall, who had taken possession June 5, 1945, and who was still in occupancy when this suit was tried in April, 1948.

The provision of the lease for the construction of the new store front is this: "(e) It is specifically agreed that the premises herein demised are not, at present, suitable to the needs of the Tenant's business, but that certain alterations, improvements and additions are necessary. Accordingly, the Landlord agrees at his own cost and expense, to complete, *on or before one (1) year after the war has ended and material and labor become available,* such alterations and improvements in accordance with plans and specifications attached hereto and marked Exhibit 'A' and by this reference made a part hereof."

The lease also provides that failure of the landlord to complete the improvements within the specified time shall give the

tenant the option to cancel the lease. However it is not claimed the tenant would be confined to such remedy.

Rent is fixed by the lease. at $540 per annum in equal monthly instalments (of $45) and in addition three per cent of the gross sales in the leased premises in excess of $18,000 up to $30,000, payable annually on or before July 5. Sales were such that this added percentage rental amounted to $360 for the second year of plaintiff's occupancy. Plaintiff always paid his rent except the percentage rent of $360 due July 5, 1947, which he deposited in escrow with an Indianola bank June 6, 1947, to be paid over to defendants in the event they constructed the new store front or entered into a contract therefor not later than December 31, 1947. Otherwise the $360 was to be returned to plaintiff. Because of plaintiff's failure to pay this percentage rental defendants caused to be served on plaintiff December 1, 1947, written notice their rights under the lease would be terminated January 1, 1948.

Plaintiff commenced this suit December 16, 1947, asking in Count I a declaratory judgment that the lease is in full force and defendants are obligated thereunder to construct the new store front and in Count II for a decree of specific performance of the agreement so to do and for damages by reduction in the rent because of defendants' failure to make the improvement.

Defendants' answer and counterclaim admits the execution of the lease and plaintiff's possession but denies that the war has ended or that defendants have violated the terms of the lease and denies because of plaintiff's nonpayment of rent, the lease is in force. Based on such nonpayment and the notice of termination defendants ask that their title be quieted against plaintiff and they have judgment for the rent due.

Plaintiff's reply denies most of defendants' affirmative allegations and alleges defendants are estopped because of their acceptance of monthly rentals to deny the lease is in force and are estopped because of admissions to plaintiff to deny the war has ended.

The trial court held in favor of plaintiff on all issues, decreed the lease is in full force, ordered defendants to install a new front immediately and for their failure to make the im-

provement awarded plaintiff damages of $20 per month from September 1, 1946, until the new front is installed.

I. Defendants contend they are not in default on their agreement to construct the new store front because the war did not end with the cessation of hostilities on "V J day" on or about August 15, 1945, as the trial court held. They say the war will not end until peace treaties are made and ratified. It is conceded there has been no such treaty. We are not inclined to accept this contention.

There is a line of decisions which holds that war does not end with the cessation of hostilities but continues until peace treaties are signed and ratified or peace is formally proclaimed. The existence of war and restoration of peace, according to these authorities, are political questions determined by the legislative and executive departments and such determination is conclusive and binding on the courts. See Palmer v. Pokorny, 217 Mich. 284, 186 N. W. 505; Meier v. Schmidt, 150 Neb. 383, 34 N. W. 2d 400, 403, 404; Industrial Commission of Ohio v. Rotar, 124 Ohio St. 418, 179 N. E. 135; Waller v. United States, Court of Claims, 78 F. Supp. 816, and citations; Woods v. Cloyd W. Miller Co., 333 U. S. 138, 68 S. Ct. 421, 92 L. Ed. 596, and citations; 56 Am. Jur., War, section 13; 67 C. J., War, sections 195–197.

However there is an impressive array of authority which supports the trial court's decision that, as commonly understood and especially where the parties to a contract so intend, war ends when hostilities cease. See Kaiser v. Hopkins, 6 Cal. 2d 537, 58 P. 2d 1278, 1279; Rupp Hotel Operating Co. v. Donn, 158 Fla. 541, 29 So. 2d 441 (involving a lease for the "duration of the present World War"); Scott v. Commissioner of Civil Service, 272 Mass. 237, 172 N. E. 218; Lefevre v. Healy, 92 N. H. 162, 26 A. 2d 681; Glantz v. Willow Supply Co., 139 N. J. Eq. 523, 53 A. 2d 346, 348; Lincoln v. Harvey, Tex. Civ. App., 191 S. W. 2d 764 (a lease "for the duration of the war"); Hoover v. Sandifur, 25 Wash. 2d 791, 171 P. 2d 1009, 168 A. L. R. 170, and annotation 173; Samuels v. United Seamen's Service, 9 Cir., Cal., 165 F. 2d 409 (involving a lease); New York Life Ins. Co. v. Durham, 10 Cir., Utah, 166 F. 2d 874; Stinson

v. New York Life Ins. Co., App. D. C., 167 F. 2d 233 (reversing same case in 69 F. Supp. 860, cited by defendants). Other decisions might be mentioned. The two cases last cited hold that the determination of the existence of war by the political departments of government is conclusive upon the courts only in matters of public concern.

We are disposed here to follow these authorities. Except for Palmer v. Pokorny, supra, 217 Mich. 284, 186 N. W. 505, most decisions which express the view first above stated involve the continuance of wartime legislation rather than private contracts.

"Similarly, where private contracts are in terms limited to the 'duration of the war', the courts have generally held that the meaning of that phrase is to be decided by determining the intent of the parties * * *. However, there is some authority holding that, despite the clear intent of the parties to the contrary, such a contract remains in force until peace is formally restored." (Citing Palmer v. Pokorny, supra.) Note 47 Columbia L. Rev. 255, 267.

We cannot agree with defendants' argument that the words "after the war has ended" as here used have an accepted legal meaning which is necessarily the equivalent of "after peace is formally proclaimed." See especially Stinson v. New York Life Ins. Co., supra. The view most favorable to defendants which can be adopted is that the quoted provision of the lease is indefinite or ambiguous and therefore subject to construction.

The primary rule of construction is if possible to give effect to the intention of the parties. Osceola v. Gjellefald Constr. Co., 225 Iowa 215, 217, 279 N. W. 590; V. L. Dodds Co. v. Consolidated School Dist., 220 Iowa 812, 816, 263 N. W. 522; 17 C. J. S., Contracts, section 295a; 12 Am. Jur., Contracts, section 227.

Unfair or unreasonable results will if possible be avoided. Johnston v. Johnston, 182 Iowa 481, 166 N. W. 65; 17 C. J. S., Contracts, section 319; 12 Am. Jur., Contracts, section 250.

Unless it is shown words were intended in a different sense they will be given their ordinary and popularly accepted

meaning. Carson v. Great Lakes Pipe Line Co., 238 Iowa 50, 53, 54, 25 N. W. 2d 855, 857, and citations; 12 Am. Jur., Contracts, section 236.

■ The practical construction placed upon an ambiguous or indefinite contract by the parties thereto will usually be adopted by the courts. Fort Dodge Co-op. D. M. Assn. v. Ainsworth, 217 Iowa 712, 716, 251 N. W. 85, and citations; 17 C. J. S., Contracts, section 325a; 12 Am. Jur., Contracts, section 249.

■■ There is little doubt the parties here intended the words "after the war has ended" to mean after hostilities have ceased. War, in the practical and realistic sense in which it is commonly used, refers to the period of hostilities and not to a technical state of war which may exist after the fighting has ended. New York Life Ins. Co. v. Durham, supra, 10 Cir., Utah, 166 F. 2d 874, 876; Stinson v. New York Life Ins. Co., supra, App. D. C., 167 F. 2d 233, 238, 239; Kaiser v. Hopkins, supra, 6 Cal. 2d 537, 58 P. 2d 1278, 1279. There is no evidence the quoted words were used in a technical sense to signify the ratification of peace treaties. The parties did not contract in terms of diplomatic parlance.

The lease itself recites the premises are not suitable to the needs of the tenant's business and that the new front is necessary. Apparently the purpose of delaying the improvement was the shortage of material and labor due to the war. It is shown material and labor were available for the construction of the front within one year after hostilities ceased. To hold defendants are under no obligation to install it until one year after peace treaties are ratified might conceivably deprive the tenant of the benefits of this provision throughout the entire ten years of the lease and render the provision inoperative. Such a holding would be unreasonable.

Until defendants served plaintiff with notice of termination of the lease on December 1, 1947, they never contended the war did not end when hostilities ceased. This statement is found in a letter to plaintiff written for both defendants October 5, 1946, in response to an inquiry by plaintiff as to when the new front would be constructed: "The war didn't end until latter

part of August, 1945." The letter goes on to say "In the Fall of the year before Pearl Harbor" defendants had an estimate of $1200 on the cost of the new front while in August 1946 the estimate from the same company was $3314 and added, "that is ridiculous. When material and labor become more normal again we will put in the new front." This last sentence is substantially repeated in a letter from defendant Mr. Day to plaintiff on January 6, 1947.

It is apparent defendants interpreted the lease to mean that the war would end when the fighting ended. We are not compelled to affix to the contract a meaning contrary to that intended by the parties. The evidence of the interpretation placed upon this lease by defendants is not to be rejected on the theory advanced by their counsel that they mistakenly placed an erroneous construction upon an unambiguous contract which the courts will not recognize. Such theory is not applicable here.

II. Defendants challenge the trial court's award of $20 per month damages from September 1, 1946, for their breach of the contract.

■ The usual measure of damages for breach of a lessor's agreement to make improvements is the difference in the rental value with and without such improvements. Ladner v. Balsley, 103 Iowa 674, 678, 679, 72 N. W. 787; 32 Am. Jur., Landlord and Tenant, section 731; 51 C. J. S., Landlord and Tenant, section 406; annotations 28 A. L. R. 1448, 1495, 116 A. L. R. 1228, 1239. The parties agree this is the correct measure of damages and, further, that the trial court applied such rule.

■ We think the testimony supports the allowance of damages and there is insufficient basis for our interfering with it. As previously indicated, there is evidence material and labor were available so the improvement could have been made by September 1, 1946. Two witnesses for plaintiff fix the difference in rental value with and without the new front at $20 to $25 a month. A witness for defendants estimates such difference at $5 to $7.50, another at $10, per month. On this purely fact question we are justified in giving weight to the trial court's finding.

■ One of plaintiff's value witnesses owned and managed a Ben Franklin store (the trade name under which plaintiff operated) at Winterset, about twenty-six miles from Indianola, with approximately the same population, and had been engaged in that work nearly eight years. We are not prepared to hold his testimony should be rejected on the ground his knowledge of rental value of such property in Indianola was insufficient to qualify him as a witness. See in this connection State v. Bevins, 210 Iowa 1031, 1052, 1053, 230 N. W. 865; Wicks v. German Loan & Inv. Co., 150 Iowa 112, 116, 129 N. W. 744; Hunter v. Burlington, C. R. & N. Ry. Co., 84 Iowa 605, 608, 51 N. W. 64; annotation 159 A. L. R. 7, 26, 38 et seq.

■ III. We are not inclined to enforce defendants' attempt to cancel the lease. As stated, defendants caused to be served on plaintiff on December 1, 1947, written notice that his rights under the lease would be terminated January 1, 1948. Basis for the notice is that plaintiff had not paid the percentage rent of $360 due July 5, 1947, but without defendants' consent had deposited it in escrow with a local bank in June. The lease provides the landlord may terminate the lease for default in payment of rent where such default continues for fifteen days after notice thereof shall have been given the tenant by the landlord.

Although plaintiff did not pay over the percentage rent to defendants within fifteen days after the notice was served he did commence this suit before such period expired. His petition alleges he has been and is ready and willing at all times to carry out the terms of the lease on his part upon defendants' carrying out the terms thereof on their part and he offers to make such payments as may be decreed in carrying out his obligations under the lease. Plaintiff renewed this offer upon the trial and testified he was able to make such payments as might be ordered.

When defendants sought to terminate the lease on December 1, 1947, because of plaintiff's nonpayment of $360 rent plaintiff held a claim for damages against defendants which then amounted to $300 for breach of their agreement to construct the new front. Plaintiff was entitled to offset this claim against

the rent he was owing which left only $60 as the net amount then due from him. See Piper v. Fletcher, 115 Iowa 263, 266, 88 N. W. 380; 32 Am. Jur., Landlord and Tenant, section 539; 52 C. J. S., Landlord and Tenant, section 557d; annotations 28 A. L. R. 1448, 1484, 1485 et seq., 116 A. L. R. 1228, 1237. Defendants' counterclaim seeks to recover all rent due up to the time of judgment and the trial court properly offset against the claim for rent the damages due plaintiff.

Under the circumstances it would be inequitable to enforce defendants' attempted forfeiture of the lease. Our unwillingness so to do finds support in Clinton v. Shugart, 126 Iowa 179, 188, 189, 101 N. W. 785; annotations 16 A. L. R. 437, 24 A. L. R. 724, 56 A. L. R. 800; 30 C. J. S., Equity, section 56a.

 IV. We feel plaintiff should not have specific performance of the agreement to construct the new front. Of course the burden rests on him to show he is entitled to such relief.

As stated, the term of the lease is one year from March 1, 1945, with an option to the tenant to extend it nine more years by a single extension or by successive extensions each for one year. Plaintiff did not exercise his option to extend the term nine years but has continued in occupancy by successive extensions for one year. The last such extension shown expired February 28, 1949. It is not shown plaintiff is bound by the lease or even that he is willing so to be bound beyond this date. If we were to assume without any evidence thereof that plaintiff has again exercised his option to extend the lease another year he would be bound thereby only until February 28, 1950.

Further, as previously indicated, the lease prepared by the original tenant, plaintiff's assignor, Butler Brothers, provides the landlord's failure to construct the new front "within the time specified herein" gives the tenant the option "at any time thereafter" to cancel the lease. No waiver of this provision by plaintiff or offer to waive it is shown. Under this clause plaintiff is at liberty to cancel the lease at any time by reason of defendants' failure to make the improvement within the specified time.

Plaintiff's evidence is that cost of the new front will exceed $3300. It is one specially designed for a Ben Franklin store

with large lettering built into the glass front. Much of the expenditure would be virtually wasted if the building were not used for a Ben Franklin store. It would be inequitable to compel defendants to make this expensive improvement largely for plaintiff's benefit when defendants at best have no assurance of plaintiff's tenancy beyond the following February 28 and the yearly rent (including the percentage rental) is only $900.

There is very little authority to support a decree for specific performance of a lessor's agreement to improve the premises even where the continuance of the term does not lie in the tenant's option. The remedy usually invoked is an action for damages. 51 C. J. S., Landlord and Tenant, section 406, and 32 Am. Jur., Landlord and Tenant, section 731, in discussing the remedies available to the tenant for breach of such an agreement, do not mention specific performance. See also annotations 28 A. L. R. 1448, 116 A. L. R. 1228.

No decision has come to our attention which supports a decree of specific performance under such facts as are now before us. Since the continuance of the lease is optional with plaintiff and defendants are not assured of performance by him beyond the next February 28, plaintiff is not entitled to specific performance and it would be inequitable under the circumstances here to grant such relief. See Richmond v. Dubuque & S. C. R. Co., 33 Iowa 422, 486, 487; Newman v. French, 138 Iowa 482, 116 N. W. 468, 18 L. R. A., N. S., 218, 128 Am. St. Rep. 212; Steltzer v. Compton, 167 Iowa 266, 149 N. W. 243; Marti v. Ludeking, 193 Iowa 500, 504, 185 N. W. 476; 49 Am. Jur., Specific Performance, sections 34, 35, 117; 58 C. J., Specific Performance, sections 29, 160; annotations 117 A. L. R. 256, 65 A. L. R. 7; 1 Iowa L. Bull. 64, 69 et seq.

In so far as the trial court's decree orders specific performance of the agreement to construct the new front it is reversed. In so far as it awards damages for breach of such agreement and refuses to terminate the lease it is affirmed. The cause is remanded for decree pursuant to this opinion. Costs of this

appeal to be equally divided.—Affirmed in part, reversed in part and remanded.

HALE, C. J., and BLISS, OLIVER, WENNERSTRUM, and SMITH, JJ., concur.

MULRONEY and HAYS, JJ., dissent.

MULRONEY, J. (dissenting)—I dissent from Divisions II and III of the majority opinion. The plaintiff in his petition prayed for "such reduction in payment of rents as the court may determine will compensate the plaintiff for the failure to make such improvement." The trial court reduced the rent $20 a month, extending on into the future as long as plaintiff stays on the property under the lease and defendant fails to make the improvement. This provision in the trial court's decree receives the approval of the majority of this court.

The general rule is that a landlord's agreement in a lease, to repair or improve, is independent of the tenant's agreement to pay rent, unless the covenant to repair or improve is made a condition precedent to the covenant to pay rent. 52 C. J. S., Landlord and Tenant, section 487; Piper v. Fletcher, 115 Iowa 263, 266, 88 N. W. 380, 381; Stone v. Sullivan, 300 Mass. 450, 15 N. E. 2d 476, 116 A. L. R. 1223; Richard Paul, Inc. v. Union Improvement Co., 59 F. Supp. 252; Frazier v. Riley, 215 Ala. 517, 111 So. 10; Magee v. Indiana Business College, 89 Ind. App. 640, 166 N. E. 607; Banister Real Estate Co. v. Edwards, Mo. App., 282 S. W. 138; Mitchell v. Weiss, Tex. Civ. App., 26 S. W. 2d 699; Community Theaters, Inc. v. Weilbacher, Tex. Civ. App., 57 S. W. 2d 941.

In Piper v. Fletcher, supra, which is cited in the majority opinion, we held:

"The covenant to pay rent and the covenant to repair are independent, however; and failure of the landlord to repair does not work a forfeiture of the rent, where the tenant remains in the possession and occupancy of the premises."

Surely the Piper case is no authority for the holding in the majority opinion. It is clear that in this case the covenant

to improve is not made a condition precedent to the covenant to pay rent. The majority would concede this. The majority opinion holds in effect that plaintiff can stay in occupancy and he is absolved from paying a portion of the rent reserved, because the defendant breached his agreement to improve. This is not treating the two covenants as independent. Clearly it is making the covenant to pay rent entirely dependent on the covenant to improve.

There may have been some basis for the award of $300 for past damages, under the pleadings in this case where the defendant-landlord counterclaimed for his unpaid rent. All authorities agree that a tenant can recoup his damages for breach of a landlord's agreement to improve, in a suit against him for rent. In so far as the defendant claimed a judgment for rent, plaintiff could offset his claim for damages for breach of the agreement to improve. Piper v. Fletcher, supra. But the continuing failure of the landlord to improve does not work any forfeiture of the rent payable under the lease, where the tenant remains in possession. The plaintiff did not pay the rent. The placing of a portion of the rent in escrow was meaningless. This court in decreeing that the tenant can remain in occupancy without paying the full rent because the landlord has breached his covenant to improve is today sanctioning that which we would have condemned in the days of Piper v. Fletcher, supra.

Because of the rent claim in the pleading I would allow the claim for damages for $300 but order forfeiture unless the balance of $60 of the back rent was paid immediately. I would reverse that portion of the trial court's decree that decreased plaintiff's future rent because of damages plaintiff might sustain by reason of defendant's continuing breach of the contract to improve. Plaintiff has an adequate remedy in a suit against defendant for the breach of this independent covenant in the lease.

I am authorized to state that Justice HAYS joins in this dissent.