TO BE PUBLISHED IN THE OFFICIAL REPORTS

OFFICE OF THE ATTORNEY GENERAL
State of California

DANIEL E. LUNGREN
Attorney General

_____

|  |  |  |
|---|---|---|
| OPINION | : | |
| | : | No. 94-1204 |
| of | : | |
| | : | August 23, 1995 |
| DANIEL E. LUNGREN | : | |
| Attorney General | : | |
| | : | |
| CLAYTON P. ROCHE | : | |
| Deputy Attorney General | : | |
| | : | |

_____

THE HONORABLE SAL CANELLA, MEMBER OF THE CALIFORNIA ASSEMBLY, has requested an opinion on the following question:

To what extent, if any, may a city or county impose a business license tax upon a nonprofit organization?

CONCLUSION

A city or county may impose a business license tax upon a nonprofit organization so long as the tax is not measured by the organization's income or gross receipts.

ANALYSIS

In 1994 the people adopted Proposition 176, amending article XIII, section 26 of the Constitution. Among the changes in the constitutional language was the addition of subdivision (d), which reads as follows:

"A nonprofit organization that is exempted from taxation by Chapter 4 (commencing with Section 23701) of Part 11 of Division 2 of the Revenue and Taxation Code or Subchapter F (commencing with Section 501) of Chapter 1 of Subtitle A of the Internal Revenue Code of 1986, or the successor of either, is exempt from any business license tax or fee measured by income or gross receipts that is levied

1.                                                                94-1204

by a county or city, whether charter or general law, a city and county, a school district, a special district, or any other local agency."

Revenue and Taxation Code section 7284.1,[1] implementing Proposition 176, provides:

"No license tax or fee levied by a charter or general law county, city and county, or city, or by a district or any other local agency, that is measured by the licensee's income or gross receipts, shall apply to any nonprofit organization that is exempted from taxes by Chapter 4 (commencing with Section 23701) of Part 11 of Division 2 of the Revenue and Taxation Code or Subchapter F (commencing with Section 501) of Chapter 1 of Subtitle A of the Internal Revenue Code of 1986, or the successor of either, or to any minister, clergyman, Christian Science practitioner, rabbi, or priest of any religious organization that has been granted an exemption from federal income tax by the United States Commissioner of Internal Revenue as an organization described in Section 501(c)(3) of the Internal Revenue Code or a successor to that section."

We are asked herein whether a city or county may impose a business license tax upon nonprofit organizations now that Proposition 176 has been adopted and section 7284.1 enacted. We conclude that a business license tax may be imposed as long as the measure of the tax is something other than the organization's income or gross receipts.

A "business license tax" is typically defined as a "levy upon the privilege of doing business within the taxing jurisdiction." (*Weekes* v. *City of Oakland* (1978) 21 Cal.3d 386, 394.) With respect to the imposition of local taxes in general, the Constitution provides: "The Legislature may not itself impose local taxes but may authorize local governments to impose them." (Cal. Const., art. XIII, § 24.) Accordingly, for cities which operate under the general laws and all counties, we must look to a state statute to find the authority to impose business license taxes.

The rule, however, is different as to cities which are governed by home rule charters. (Cal. Const., art. XI, § 5.) Such cities have independent constitutional authority to levy municipal taxes for local purposes. (*Weekes* v. *City of Oakland*, *supra*, 21 Cal.3d at 392.) In 1982 the Legislature eliminated the distinction between charter cities and general law cities with respect to levying local taxes, granting the latter the authority "to levy any tax which may be levied by any charter city." (Gov. Code, § 37100.5; see also Cal. Const., art. XI, § 7; Gov. Code, § 37101; *Weekes* v. *City of Oakland*, *supra*, 21 Cal.3d at 392.)

As to counties, prior to 1990 the Legislature granted counties authority to levy business license taxes for regulatory purposes only. However, in 1990 the Legislature granted counties the same authority as cities to levy business license taxes for both regulatory and revenue purposes. (Bus. & Prof. Code, § 16100.)

---

[1]All references hereafter to the Revenue and Taxation Code are by section number only.

In examining the language of Proposition 176, we note that constitutional measures adopted by the people are to be interpreted by applying the usual rules of statutory construction. As stated in *Delaney* v. *Superior Court* (1990) 50 Cal.3d 785, 798:

> "We begin with the fundamental rule that our primary task is to determine the lawmakers' intent. (*Brown* v. *Kelly Broadcasting Co.* (1989) 48 Cal.3d 711, 724.) In the case of constitutional provisions adopted by the voters, their intent governs. (*Kaiser* v. *Hopkins* (1936) 6 Cal.2d 537, 538; *Armstrong* v. *County of San Mateo* (1983) 146 Cal.App.3d 597, 618.) To determine intent, `"The court turns first to the words themselves for the answer."' (*Brown* v. *Kelly Broadcasting Co., supra*, 48 Cal.3d 711, 724, quoting *Moyer* v. *Workmen's Comp. Appeals Bd.* (1973) 10 Cal.3d 222, 230.) `If the language is clear and unambiguous there is no need for construction, nor is it necessary to resort to indicia of the intent of the Legislature (in the case of a statute) or of the voters (in the case of a provision adopted by the voters).' (*Lungren* v. *Deukmejian* (1988) 45 Cal.3d 727, 735.)"

Furthermore, "[w]hen construing a constitutional provision enacted by initiative, the intent of the voters is the paramount consideration. (*In re Lance W.* (1985) 37 Cal.3d 873, 889)" (*David* v. *City of Berkeley* (1990) 51 Cal.3d 227, 234.) In discerning this intent, the ballot pamphlet and the arguments and analyses contained therein may be used as an aid. (*Legislature* v. *Eu* (1991) 54 Cal.3d 492, 504-505; *Raven* v. *Deukmejian* (1990) 52 Cal.3d 336, 349; *Amador Valley Joint Union High Sch. Dist.* v. *State Board of Equalization* (1978) 22 Cal.3d 208, 245-246; *White* v. *Davis* (1975) 13 Cal.3d 757, 774-775.)

With these principles in mind, we turn to the language of subdivision (d) of section 26 of article XIII of the Constitution. Subdivision (d) encompasses nonprofit organizations exempt from income taxes pursuant to state or federal laws. The statutory exemption most relevant here is section 23701d, subdivision (a), which exempts the following entities from state franchise and income taxes:

> "Corporations, community chests or trusts, organized and operated exclusively for religious, charitable, scientific, testing for public safety, literary, or educational purposes, or to foster national or international amateur sport competition (but only if no part of its activities involved the provision of athletic facilities or equipment), or for the prevention of cruelty to children or animals, no part of the net earnings of which inures to the benefit of any private shareholder of individual, no substantial part of the activities of which is carrying on propaganda or otherwise attempting to influence legislation, (except as otherwise provided in Section 23704.5), and which does not participate in, or intervene in (including the publishing or distribution of statements), any political campaign on behalf of (or in opposition to) any candidate for public office. . . ."

We find that the purpose of Proposition 176 was to "exempt" these specified nonprofit organizations from the decision of the Supreme Court in *Weekes* v. *City of Oakland, supra*, 21 Cal.3d 386. *Weekes* held that a charter city could enact a business license tax measured by income or gross receipts despite the prohibition contained in section 17041.5 banning the imposition of municipal taxes on income.

The court noted that "[i]t has long been established that the *measure*, or *mode* of *ascertaining* a particular tax is not conclusive as to its type or nature." (*Id*., at p. 396.) In short, the court concluded that a business license tax measured by income or gross receipts was not a prohibited local tax on income; rather, it was a tax on the privilege of doing business within the jurisdiction. The effect of Proposition 176 was thus to change the result of the *Weekes* decision for nonprofit organizations.

This purpose in adopting Proposition 176 is evident from an examination of the materials contained in the ballot pamphlet. (Ballot Pamp., Prim. Elec. (June 7, 1994), pp. 10-13.) The analysis of the measure prepared by the Legislative Analyst states in part:

"Under current law, cities and counties may impose various taxes and fees on individuals and businesses in order to support local government operations. Some of the taxes include: sales taxes, `hotel taxes', utility user taxes, and business license taxes and fees.

"Business license taxes and fees are levied on businesses operating within a city or county. These charges cover the local government's costs of licensing and regulating the business' operation, and may also generate revenue for other services. Many local governments impose these taxes, using a variety of methods. For example, business license taxes may be levied as a percentage of payroll or gross receipts, or based on the number of employees or business square footage.

"Under current law, cities and counties generally have broad authority to levy business license fees and taxes. Presumably, local governments can levy these taxes on *nonprofit organizations* (such as charitable groups and churches). We are not aware however, of any city or county which currently applies its business license tax to nonprofit organizations.

"**Proposal**

"Under this constitutional amendment, local governments could not require nonprofit organizations to pay any local business license tax or fee which is based on *income* or *gross receipts*. The amendment does not affect local governments' ability to levy these taxes on nonprofit organizations based on other methods." (*Id*., at p. 11.)

The apparent intent of the voters in adopting Proposition 176 was thus to prohibit the imposition of a business license tax upon nonprofit organizations when it is measured by income or gross receipts. The voters in no way purported to affect the ability of local agencies under proper constitutional or statutory authority to levy such taxes, in the words of the Legislative Analyst, "based on other methods." In fact the Legislative Analyst even pointed out some other methods, such as "a percentage of payroll . . . number of employees or business square footage."

In our view both Proposition 176 and section 7284.1 are clear and unambiguous. They prohibit a business license tax being levied upon nonprofit organizations *measured by gross receipts or*

*income*.  Neither prohibits the imposition of a business license tax upon a nonprofit corporation if that tax is measured by some other method.

Nonprofit organizations have various sources of revenue:  membership dues, donations, and sales of products and services, among others.  The fact that a nonprofit organization may pay a duly imposed tax (whether a sales tax, utility user tax, business license tax, or some other) using funds from its revenues does not affect the validity of the tax.  In sum, nothing in the law precludes the imposition of a local business license tax upon nonprofit organizations merely because their income or gross receipts may be used to pay the tax.

In answer to the question presented, we conclude that a city or county may impose a business license tax upon a nonprofit organization so long as such tax is not measured by income or gross receipts.

\* \* \* \* \*