Filed 4/14/23 (unmodified opinion attached)

CERTIFIED FOR PUBLICATION

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| JIM BOYDSTON et al., | D080921 |
| Plaintiffs and Appellants, | |
| v. | (Super. Ct. No. CIVDS1921480) |
| ALEX PADILLA, as Secretary of State, etc., et al., | ORDER MODIFYING OPINION |
| Defendants and Respondents. | NO CHANGE IN JUDGMENT |

THE COURT:

It is ordered that the opinion filed herein on March 21, 2023, modified on April 11, 2023, and certified for publication on April 12, 2023, be modified as follows:

On page one of the opinion, in the caption, the name "ALEX PADILLA" is deleted and replaced with "SHIRLEY N. WEBER."

There is no change in judgment.

IRION, Acting P. J.

Copies to: All parties

Filed 4/11/23 (unmodified opinion)

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| JIM BOYDSTON et al., | D080921 |
| Plaintiffs and Appellants, | |
| v. | (Super. Ct. No. CIVDS1921480) |
| ALEX PADILLA, as Secretary of State, et al., | ORDER MODIFYING OPINION AND DENYING REHEARING |
| Defendants and Respondents. | NO CHANGE IN JUDGMENT |

THE COURT:

It is ordered that the opinion filed herein on March 21, 2023, be modified as follows:

The first sentence of the opinion (beginning with "In this case . . .") is deleted and replaced with the following:

> In this case, we reject the plaintiffs' assertion of a novel and peculiar constitutional right to vote in California's presidential primary for the candidate of a political party they have chosen not to join—without having their votes count for anything other than their expressive value.

Immediately after the first full sentence on page 19 (beginning with "Not only is Plaintiffs' desire . . ."), the following footnote is inserted, which will necessitate the renumbering of subsequent footnotes:

> Plaintiffs also contend that their claims are not foreclosed by Supreme Court precedent because, unlike in *Jones*, (1) plaintiffs' complaint focuses on the rights of individual voters rather than political parties, and (2) plaintiffs allege that California's primary system is a "state-sponsored straw poll," as the political parties are not bound by the results in nominating a candidate. We reject this argument for the same reasons we have just explained. First, even if we were to accept that *Jones* is distinguishable, plaintiffs fail to sufficiently distinguish their case from *Clingman*. *Clingman* also involved the rights of individual voters and a semi-closed primary system that, like California's, leaves each political party "free to . . . nominate the candidate of its choice." (*Clingman*, *supra*, 544 U.S. at p. 587.) Plaintiffs repeatedly emphasize language from the *Clingman* opinion referencing the Libertarian Party of Oklahoma's primary—presumably to contrast with what they refer to as California's "state-funded presidential-primary process"—but fail to explain how California's presidential primary process is materially different from the system in Oklahoma upheld as constitutional by the Supreme Court. Second, as we have explained, plaintiffs' desire to express themselves via the presidential primary process without actually assisting in the selection of a party's nominee does not implicate any constitutional right.

There is no change in judgment.

The petition for rehearing is denied.

IRION, Acting P. J.

Copies to:  All parties

2

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| JIM BOYDSTON et al.,<br><br>     Plaintiffs and Appellants,<br><br>     v.<br><br>ALEX PADILLA, as Secretary of State, etc., et al.,<br><br>     Defendants and Respondents. | D080921<br><br><br><br>(Super. Ct. No. CIVDS1921480) |

APPEAL from a judgment of the Superior Court of San Bernadino County, Wilfred J. Schneider, Jr., Judge.  Affirmed.

Briggs Law Corporation, Cory J. Briggs, Janna M. Ferraro; Peace & Shea and S. Chad Peace for Plaintiffs and Appellants.

Rob Bonta, Attorney General, Thomas S. Patterson, Assistant Attorney General, Anya M. Binsacca, Nelson R. Richards and Megan Anne Richards, Deputy Attorneys General, for Defendants and Respondents.

In this case, we reject the plaintiffs' assertion of a novel and peculiar constitutional right to vote in the presidential primary of a political party they have chosen not to join—without having their votes count for anything other than their expressive value.

The question presented here is whether California may lawfully require anyone who seeks to vote in a presidential primary for a candidate of a particular political party to associate with that party as a condition of receiving a ballot with that candidate's name on it. Plaintiffs contend that the answer is no. They argue that Elections Code section 13102, the statute that establishes California's semi-closed presidential primary system, is therefore unconstitutional.

Defendants California Secretary of State and the State of California dispute this conclusion, asserting that the United States Supreme Court has answered this question in the affirmative on multiple occasions. In *California Democratic Party v. Jones* (2000) 530 U.S. 567 (*Jones*), the Court held that states may not force political parties to allow non-members to participate in their candidate-selection process and found that any "associational 'interest' in selecting the candidate of a group to which one does not belong . . . falls far short of a constitutional right, if indeed it can even fairly be characterized as an interest." (*Id.*, at pp. 573, fn. 5, 586.) In *Clingman v. Beaver* (2005) 544 U.S. 581 (*Clingman*), the Court held that requiring voters to register with a political party before participating in its primary only minimally burdens voters' associational rights; any such restriction is constitutional so long as it is reasonable and nondiscriminatory. (*Id.* at pp. 592–593.)

Attempting to avoid the conclusion compelled by these holdings, plaintiffs assert that although they must be permitted to vote in the presidential primary election without affiliating themselves with any political party, they do not seek to require the political parties to *count* their votes in determining the winner. Rather, plaintiffs merely desire to express their political preferences, and they believe they are constitutionally entitled to do

2

so by casting votes for a party's presidential candidate without registering with that party, and having "their preferences tallied and reported by the State" but not used to determine the outcome. In other words, they want their votes to be counted, but they do not want their votes to count.

As defendants point out, however, when plaintiffs discuss a "right" to cast an expressive ballot simply for the sake of doing so, rather than to affect the outcome of an election, they have ceased talking about voting. Indeed, the Supreme Court has rejected the notion that elections have some "generalized expressive function." (*Burdick v. Takushi* (1992) 504 U.S. 428, 438 (*Burdick*).) Plaintiffs' inventive theories therefore do not supply a constitutional basis for evading binding legal precedent that forecloses their arguments. Accordingly, we affirm the trial court's ruling sustaining the defendants' demurrer without leave to amend.

FACTUAL AND PROCEDURAL BACKGROUND

A. *Original Complaint and Motion for Preliminary Injunction*

Plaintiffs are registered voters and California taxpayers who filed their initial complaint in July 2019 against then-Secretary of State Alex Padilla, named in his official capacity, and the State of California.[1] They alleged that, in 2016, California's Secretary of State administered a semi-closed presidential primary that resulted in widespread voter confusion and the disenfranchisement of millions of voters. This included voters who had not registered as preferring a qualified political party, referred to as "no party

---

[1] The Secretary points out that, despite two rulings by the trial court that the State of California is not a proper party to this lawsuit, plaintiffs continue to improperly refer to the State as a defendant. Defendants contend that plaintiffs have waived any argument that the trial court erred in ruling that the State is not a proper party. We agree, and we will refer to the defendants together as "the Secretary" throughout this opinion.

3

preference" (NPP) voters, and therefore were only allowed to vote for the candidate of a party that had chosen to allow NPP voters to participate in their primary election. According to plaintiffs, California's presidential primary system is unconstitutional on its face and as applied under both the state and federal constitutions.

The complaint further alleged that three of the plaintiffs were registered as NPP voters but wanted to vote for presidential primary candidates of their choice in 2020 without registering with a political party. Two plaintiffs were registered with a political party but wanted to vote for presidential primary candidates from other parties in 2020. One plaintiff preferred to register as NPP but had remained registered as a Democrat to vote for her preferred candidate in 2020. The individual plaintiffs alleged that none of them were able to vote for the candidate of their choice in the 2016 presidential primary election "unencumbered by a condition of party preference."

The complaint asserted six causes of action: (1) California's semi-closed presidential primary election system does not comply with the California Constitution's section requiring an open presidential primary (Cal. Const., art. II, § 5, subd. (c)); (2) the semi-closed primary violates plaintiffs' substantive due process rights afforded to them by the California Constitution (Cal. Const., art. I, § 7); (3) the semi-closed primary denies plaintiffs equal protection of the law in violation of the California Constitution (Cal. Const., art. I, § 7); (4) the semi-closed primary appropriates public funds for a private purpose in violation of the California Constitution (Cal. Const., art. XVI, § 3); (5) the semi-closed primary violates plaintiffs' substantive due process rights under the United States Constitution (42 U.S.C. § 1983); and (6) the semi-closed primary violates

4

plaintiffs' right of non-association under the United States Constitution (42 U.S.C. § 1983). The complaint requested a declaration that California's presidential primary system is "illegal in some manner." It also sought an injunction prohibiting the Secretary from "administering a presidential-primary election that does not comply with all applicable laws" and a writ directing the Secretary to "bring the[ ] administration of the presidential primary election into compliance with all applicable laws."

Shortly after filing the complaint, plaintiffs filed a motion for a preliminary injunction requiring the Secretary to allow all registered voters to cast a ballot for their candidate of choice in the 2020 presidential primary election without having to associate with a political party. The Secretary opposed, arguing that plaintiffs were unlikely to succeed on the merits because the United States Supreme Court had upheld a presidential primary system nearly identical to California's system and plaintiffs' claims therefore failed as a matter of law.

The trial court held a hearing and thereafter denied the motion, concluding that plaintiffs had failed to establish a likelihood of prevailing. The court first found that, "to the extent the heart of the Plaintiffs' complaint is that they are being denied the right to vote in the presidential primary election unless they associate with a party, the U.S. Supreme Court has found that the political parties' freedom to associate means they get to dictate who is permitted to participate in the primaries that will assist in determining" their presidential nominee. Additionally, the court explained, NPP voters can vote in presidential primary elections when permitted by a political party merely by requesting a crossover ballot—they are not required to register with the party.

B. *First Amended Complaint and Motion for Judgment on the Pleadings*

5

The parties stipulated to a first amended complaint to add another plaintiff, which plaintiffs filed in December 2019. Plaintiffs did not otherwise modify or add to their allegations. By stipulation, the Secretary's answer to the original complaint was deemed the answer to the first amended complaint.

The Secretary then moved for judgment on the pleadings, making many of the same arguments it had asserted in opposition to the preliminary injunction, including that plaintiffs' claims had already been rejected by the United States Supreme Court in cases addressing similar constitutional challenges. After briefing and a hearing, the trial court granted the motion but gave plaintiffs leave to amend their complaint.

C. *Second Amended Complaint and Demurrer*

In response to the court's ruling, plaintiffs filed their second amended complaint in October 2020. The second amended complaint repeated most of the allegations of the first two complaints but slightly revised the allegations regarding the individual plaintiffs. It alleged that plaintiffs Daniel Howle and Steven Fraker each seek to vote for a presidential candidate of his choice without being required to associate with a political party. Plaintiff Jim Boydston seeks to vote for a presidential candidate running for the Democratic Party nomination in the next presidential primary election without being required to associate with the Democratic Party. Plaintiff Jeff Marston, a registered Republican, seeks to vote in the primary election for a presidential candidate other than a Republican without being required to change his party preference. Plaintiff Josephine Piarulli, a registered Democrat, would prefer to be registered as a NPP voter but remains affiliated with the Democratic Party to ensure she can vote for a presidential candidate in the next presidential primary election.

The second amended complaint also added several paragraphs alleging that the Secretary imposes additional burdens on NPP voters who want to vote in the presidential primary. NPP voters seeking to vote in the presidential primary election are required to "respond to an innocuous postcard to request a crossover ballot," bring their NPP ballot to their polling place to surrender it and request a crossover ballot there, or re-register with a party at their polling place and vote using that party's primary ballot. Plaintiffs allege that this process is onerous and the Secretary fails to inform NPP of their options. Plaintiffs also allege that many counties set arbitrary deadlines for NPP voters to request a crossover ballot, which leads some NPP voters to mistakenly believe that if they do not request a crossover ballot by mail, they have lost their ability to vote in the presidential primary.

The Secretary demurred to the second amended complaint on the grounds that it failed to state facts sufficient to constitute a cause of action, arguing that the new allegations in the second amended complaint did not salvage plaintiffs' claims. The demurrer was similar to defendants' prior attacks on the complaint and made three main arguments. First, plaintiffs misconstrued the meaning of the term "open primary" in the California Constitution (Cal. Const., art. II, § 5, subd. (c)), which requires only that the State open the ballot to nationally recognized presidential candidates without requiring them to submit a certain number of qualified signatures, not that all voters be allowed to vote for any candidate regardless of stated party preference. Second, plaintiffs could not get around the United States Supreme Court opinions in *Clingman*, which upheld a substantially similar statutory scheme against a similar constitutional challenge, and *Jones*, where the Court found unconstitutional the same open primary system plaintiffs here argue is required under the California Constitution. Third,

7

the California Constitution requires that the Legislature provide for "free elections" (Cal. Const., art. II, § 3), and courts have consistently upheld laws that provide for primary elections at the public expense while rejecting efforts to redistribute those costs to candidates or parties.

Plaintiffs opposed the demurrer, arguing in response to the Secretary's first argument that the logical extension of the California Constitution's requirement that nationally recognized presidential candidates be included on the primary ballot is that all voters, including NPP voters, should have the right to vote for any candidate meeting the requirements. Plaintiffs next argued that California's presidential primary system violates their right to freedom of association, equal protection, and substantive due process. They asserted that their case is distinguishable from *Clingman* and *Jones*, both because those cases involved the rights of political parties, rather than voters, and because plaintiffs here are not seeking to require political parties to count their presidential primary votes, only to require the Secretary to allow them to participate in the presidential primary voting process. Finally, plaintiffs asserted that they had sufficiently pleaded unconstitutional misappropriation of public funds because the California presidential primary election serves a substantially different purpose than a general election in that it is merely advisory and exclusively serves the interests of political parties; it therefore cannot serve a legitimate public purpose.

D. *Ruling on Demurrer to Second Amended Complaint*

After a hearing in January 2021, the trial court issued a ruling sustaining the Secretary's demurrer without leave to amend. The court concluded that plaintiffs' new allegations did not materially change the nature of their legal theory, which the court had previously rejected, and found that the law is clear that California's semi-closed primary system is

constitutional. Specifically, the court determined that plaintiffs still failed to allege state action that deprived them of a cognizable right, because NPP voters "do not have a *constitutional right* to vote in a presidential primary for a political party's candidate."

The trial court also found that plaintiffs' right to freedom of association is not violated by the system because the system does not mandate that they associate with any political party. The court noted that the United States Supreme Court has already held that political parties are permitted to restrict who can participate in their primaries. Moreover, the court found, *Jones* and *Clingman* establish that the Secretary's differing treatment of NPP voters and political party members is justified, and plaintiffs failed to allege facts demonstrating any arbitrary state action such that plaintiffs' constitutional rights were violated.

Regarding plaintiffs' misappropriation claim, the court concluded that the claim failed as a matter of law because using public funds to conduct primary elections does not violate the California Constitution, and plaintiffs cited no authority to support their argument to the contrary.

The court declined to grant leave to amend based on its conclusion that the facts were not in dispute, no liability exists as a matter of law, and plaintiffs had failed to effectively amend their complaint after they had already been given the opportunity to do so. The court directed counsel for defendants to prepare and submit the order of judgment. They did so, but the trial court did not execute the judgment at that time.

When plaintiffs filed their notice of appeal on March 29, 2021, they submitted only a copy of the January 29, 2021 order sustaining the demurrer. This court notified plaintiffs that an order sustaining a demurrer without leave to amend is not appealable and directed them to file a judgment with

this court or have their appeal dismissed.  Plaintiffs then obtained and filed with this court a judgment from the trial court dated April 28, 2021.  We construe the notice of appeal as being taken from the judgment.

## DISCUSSION

### I

We review a judgment of dismissal based on a sustained demurrer de novo to determine whether the complaint alleges facts sufficient to state a cause of action.  (*T.H. v. Novartis Pharmaceuticals Corp.* (2017) 4 Cal.5th 145, 162.)  The California standard of review for an order sustaining a demurrer requires us to accept as true all properly pleaded material factual allegations of the complaint, together with facts that may be properly judicially noticed.  (*Blank v. Kirwan* (1985) 39 Cal.3d 311, 318.)  Where the trial court sustains a demurrer without leave to amend, we consider whether there is a reasonable possibility plaintiffs could cure the defect by an amendment and must reverse for abuse of discretion if that possibility exists.  (*Ibid.*)  Plaintiffs bear the burden of proving that an amendment would cure the defect.  (*Ibid.*)

Because certain of plaintiffs' claims are pleaded under section 1983 of title 42 of the United States Code, however, we apply the federal standard for review of the grant of a motion to dismiss to those claims.  (*Rubin v. Padilla* (2015) 233 Cal.App.4th 1128, 1144.)  Under that standard, dismissal is proper only where it appears certain that plaintiffs can prove no set of facts in support of their claims that would entitle them to relief.  (*Arce v. Childrens Hospital Los Angeles* (2012) 211 Cal.App.4th 1455, 1471.)  In line with both California and federal practice, we accept the allegations in the complaint as true and construe them in the light most favorable to plaintiffs.  (*Ibid.*)

### II

Plaintiffs' first argument on appeal is that California's semi-closed presidential primary system is unconstitutional because it violates (1) their First Amendment right to freedom of association under the United States Constitution, (2) the equal protection clause of the California Constitution and United States Constitution, and (3) their substantive due process rights under the United States Constitution. We conclude that these constitutional challenges are without merit.

A. *Legal Background*

California currently uses a semi-closed primary for presidential elections. (Elec. Code, § 13102.)[2] Voting in primary elections is limited to voters who have registered disclosing a preference for one of the political parties participating in the election unless the political party has authorized a voter who has not registered a party preference to vote the ballot of that party. Under this system, NPP voters may vote in presidential primaries of qualified political parties in one of two ways: (1) they may register for the party in whose presidential primary election they wish to vote; or (2) they may request the partisan ballot of a political party that has authorized NPP voters to participate in the party's primary election. (§ 13102, subds. (a), (b).) All voters may change their voter registration to reflect a different party preference at any point up to two weeks prior to the election. (§ 2119, subd. (a).) Voters who miss that deadline may conditionally register up to and on election day and cast a provisional ballot, which will be processed and

---

[2] All subsequent statutory references are to the Elections Code unless otherwise noted.

11

counted once the county elections office verifies the information supplied by the voter.  (§ 2170.)

Before adopting a semi-closed presidential primary election, California used a "closed" primary to determine the nominees of qualified political parties for many years.  (*Jones*, *supra*, 530 U.S. at p. 570.)  Under the closed system, voters who did not identify a political party affiliation when registering to vote were not allowed to vote for candidates running for a partisan office in primary elections.  Each voter thus received a ballot limited to candidates of their own party.  (*Ibid.*)

In 1996, California voters adopted by initiative Proposition 198, which changed California's partisan primary from a closed primary to an "open" or "blanket" primary.  (*Jones*, *supra*, 530 U.S. at p. 570.)  Proposition 198 allowed all voters, including those not affiliated with any political party, to vote for any candidate regardless of the candidate's political affiliation.  (*Ibid.*, citing former § 2001.)  After the new law's enactment, each voter's primary ballot listed "every candidate regardless of party affiliation and allow[ed] the voter to choose freely among them."  (*Ibid.*)

In 2000, the United States Supreme Court invalidated California's partisan blanket primary.  The Court found that it violated political parties' First Amendment right to freedom of association because it required political parties to affiliate with voters who had chosen not to become party members by forcing the parties to allow non-members to participate in their candidate-selection process.  (*Jones*, *supra*, 530 U.S. 567.)  While the Court recognized "that States have a major role to play in structuring and monitoring the election process, including primaries," it emphasized that the processes by which political parties select their nominees are not "wholly public affairs that States may regulate freely."  (*Id.* at pp. 572–573.)  The Court concluded

12

that California's blanket primary forced political parties to associate with "those who, at best, have refused to affiliate with the party, and, at worst, have expressly affiliated with a rival." (*Id*. at p. 577.) Such forced affiliation, the Court found, had the likely effect of negatively impacting the political parties' candidate-selection process and overall message—a severe burden on the parties' right of association. (*Id*. at pp. 581–582.) The Court determined that the proffered state interests were not compelling, nor was Proposition 198 narrowly tailored such that it could withstand strict scrutiny, and it therefore held the law unconstitutional. (*Id*. at pp. 582–586.)

After *Jones*, the California legislature reinstated the previous closed primary system, but it modified the law. (Stats. 2000, ch. 898, § 8.) Voters registered as preferring a qualified political party receive a ballot containing that party's partisan candidates as well as all candidates for nonpartisan offices, voter-nominated offices, and measures. (§ 13102, subds. (a), (b).) By default, NPP voters receive only a nonpartisan ballot containing all candidates for nonpartisan offices, voter-nominated offices, and measures. (*Id*., subd. (b).) An NPP voter may, however, request the partisan ballot of a political party if that party has authorized NPP voters to participate in the party's primary election. (*Ibid*.) A party that wants to allow NPP voters to vote in its primary must notify the Secretary of State no later than the 135th day before the partisan primary election. (*Id*., subd. (c).) This semi-closed system for partisan primary elections remains in place today. (§ 13102.)

B. *Analysis*

    1. *Applicable Legal Standard*

There is no dispute that the right to vote is fundamental. (See *Burdick*, *supra*, 504 U.S. at p. 433.) "It does not follow, however, that the right to vote in any manner and the right to associate for political purposes through the

13

ballot are absolute." (*Ibid.*) As a practical matter and under constitutional law, government must play an active role in, and substantially regulate, elections to ensure they are fair. (*Ibid.*; *Storer v. Brown* (1974) 415 U.S. 724, 730 (*Storer*).) And though electoral regulations "will invariably impose some burden upon individual voters," not all burdens are unconstitutional, nor do all regulations compel strict scrutiny. (*Burdick*, at p. 433.)

A court considering a constitutional challenge to an election law under the First and Fourteenth Amendments must apply the analysis and balancing test set forth by the United States Supreme Court in *Anderson v. Celebrezze* (1983) 460 U.S. 780 (*Anderson*) and developed more fully in *Burdick*. (*Kunde v. Seiler* (2011) 197 Cal.App.4th 518, 538–539; see also *Norman v. Reed* (1992) 502 U.S. 279, 288, fn. 8 ["As in *Anderson* . . . 'we base our conclusions directly on the First and Fourteenth Amendments and do not engage in a separate Equal Protection Clause analysis.' "].)[3] Under the *Anderson/Burdick* test, the standard applied to the challenged election law depends upon the burden it places upon voters. (*Burdick, supra*, 504 U.S. at p. 434.) Where the law imposes severe restrictions on voters' First and Fourteenth Amendment rights, it must be narrowly tailored and advance a compelling state interest. (*Ibid.*) If the law imposes only "reasonable, nondiscriminatory restrictions," on the other hand, "the state's important regulatory interests are generally sufficient to justify" the restrictions. (*Anderson*, at p. 788.)

Before turning to the application of this framework, we first address plaintiffs' threshold argument that conducting the *Anderson/Burdick* analysis

---

[3]    The equal protection clauses of the California Constitution and United States Constitution "are substantially equivalent" and courts "analyze them in a similar fashion." (*People v. K.P.* (2018) 30 Cal.App.5th 331, 341.)

is beyond the scope of a demurrer, and the trial court therefore erred in applying the test.[4] Plaintiffs assert that because various United States Supreme Court election law challenges were decided after some form of evidentiary hearing where the lower court had weighed voter burdens and countervailing state interests, implicit in those holdings is the conclusion that such cases can *never* be decided on the pleadings. Plaintiffs cite no authority in support of this proposition. In fact, they concede on reply that the California Supreme Court and the Ninth Circuit have both resolved election law challenges at the pleading stage. (See, e.g., *Edelstein v. City and County of San Francisco* (2002) 29 Cal.4th 164 (*Edelstein*) [concluding that the trial court had properly granted defendant's motion for judgment on the pleadings]; *Rubin v. City of Santa Monica* (9th Cir. 2002) 308 F.3d 1008 [affirming grant of defendant's motion to dismiss for failure to state a claim].)

At least one appellate court has also affirmed dismissal of a constitutional challenge to a state election law at the pleading stage. (See *Rubin v. Padilla, supra*, 233 Cal.App.4th at pp. 1135, 1137 [affirming judgment after trial court sustained demurrer without leave to amend].) The plaintiffs in *Rubin v. Padilla* argued that the trial court improperly resolved their claims on demurrer because it was "required to permit them 'to investigate the historical record, analyze statistical data, and develop expert testimony' before it could evaluate the nature of the burden imposed on their

---

4      Plaintiffs also contend it was error for the trial court to sustain the demurrer because the second amended complaint seeks declaratory relief, and plaintiffs are entitled to a declaration of rights even if it is against their interests. Because plaintiffs raise this argument for the first time in their reply brief without a showing of good cause, it has been forfeited. (*Hurley v. Dept. of Parks & Recreation* (2018) 20 Cal.App.5th 634, 648, fn. 10.)

15

constitutional rights and weigh that burden against the state's asserted interests." (*Id*. at p. 1154.) The court rejected the argument, as do we.

We therefore turn to application of the *Anderson/Burdick* framework to plaintiffs' claims.

2. *Any Constitutional Burden Is Minimal and Reasonable*

Step one of the *Anderson/Burdick* balancing test is to determine " 'the character and magnitude of the asserted injury to the rights protected by the First and Fourteenth Amendments that the plaintiff seeks to vindicate.' " (*Burdick, supra,* 504 U.S. at p. 434.) In other words, we must first decide whether the challenged law severely burdens the right to vote. Plaintiffs contend that section 13102 places a steep burden on NPP voters because it forces them to affiliate with a political party as a prerequisite to primary voting and requires NPP voters who have not affiliated with a party but wish to vote in a primary election to request a crossover ballot, which is a confusing and onerous process. According to Plaintiffs, the imposition of these burdens leads to the disenfranchisement of NPP voters. The Secretary argues that California NPP voters experience materially similar burdens as those already recognized as minimal in *Clingman*, and plaintiffs' arguments are foreclosed by the United States Supreme Court decisions in *Clingman* and *Jones*. We agree with the Secretary.

Plaintiffs first contend that California's presidential primary system imposes an impermissible burden on their First Amendment freedom to associate because it requires them to associate with a political party to vote in the primary. They assert that "California's understanding of party affiliation as a minimal burden . . . cannot be squared with the ever-increasing number of voters who do not want to associate with any of the political parties or participate in their private nomination process[ ]." As the

16

Secretary points out, however, characterizing party affiliation as a minimal burden does not merely reflect California's "understanding" of the prerequisite to partisan voting—it reflects a binding statement of law made by the United States Supreme Court. (*Clingman*, *supra*, 544 U.S. at p. 592.)

In *Clingman*, the Court considered a constitutional challenge to Oklahoma's semi-closed primary system. (*Clingman*, *supra*, 544 U.S. at p. 584.) Like California's current system, Oklahoma's law allowed political parties to choose whether to allow independent voters to participate in their partisan primary elections, but the law did not allow parties to open their primary elections to other parties' members. (*Ibid*.) The Libertarian Party of Oklahoma and voters registered as Republicans and Democrats argued that Oklahoma's semi-closed primary system violated their First Amendment right to freedom of political association. (*Ibid*.) The Court disagreed, finding that "requiring voters to register with a party prior to participating in the party's primary *minimally* burdens voters' associational rights." (*Id*. at p. 592, italics added.)

Even before *Clingman*, the Court had determined that any "associational 'interest' in selecting the candidate of a group to which one does not belong . . . falls far short of a constitutional right, if indeed it can even fairly be characterized as an interest." (*Jones*, *supra*, 530 U.S. at p. 573, fn. 5; see also *Tashjian v. Republican Party* (1986) 479 U.S. 208, 215, fn. 6 ["the nonmember's desire to participate in the party's affairs is overborne by the countervailing and legitimate right of the party to determine its own membership qualifications"].) Dismissing the argument plaintiffs advance here, the Court explained: "The voter who feels himself disenfranchised should simply join the party. That may put him to a hard choice, but it is not a state-imposed restriction upon *his* freedom of association, whereas

17

compelling party members to accept his selection of their nominee *is* a state-imposed restriction upon theirs." (*Jones*, at p. 584.)  Requiring voters to associate with a party—whether by registering or requesting a crossover ballot—to participate in a partisan primary is thus, at most, a slight burden.

Plaintiffs seek to avoid this conclusion by claiming they are not seeking to *participate* or interfere in the political parties' process but rather to *express themselves* through the presidential primary process.  Specifically, they desire to "express their political views and preferences at the polls, unencumbered by the condition of registering or otherwise associating with a political party."

But again, United States Supreme Court precedent forecloses this argument.  The Court has explained that "the function of the election process is 'to winnow out and finally reject all but the chosen candidates,' . . . not to provide a means of giving vent to 'short-range political goals, pique, or personal quarrel[s].'  Attributing to elections a more generalized expressive function would undermine the ability of States to operate elections fairly and efficiently." (*Burdick*, *supra*, 504 U.S. at p. 438, quoting *Storer*, *supra*, 415 U.S. at pp. 730, 735.)  It has also expressly stated that "[b]allots serve primarily to elect candidates, not as fora for political expression." (*Timmons v. Twin Cities Area New Party* (1997) 520 U.S. 351, 363 (*Timmons*).)  The California Supreme Court has also recognized that the purpose of the election process is "not simply to provide an outlet for political expression." (*Edelstein*, *supra*, 29 Cal.4th at p. 182, citing *Burdick*, at p. 438.)  Moreover, the Legislature has defined the word "vote" as used in the California Constitution as "all action necessary *to make a vote effective* in any primary, special, or general election, including, but not limited to, voter registration, any other act prerequisite to voting, *casting a ballot, and having the ballot counted properly and included in the appropriate totals of votes cast* with

18

respect to candidates for public office and ballot measures." (§ 15702, italics added.)[5]  Not only is Plaintiffs' desire to express themselves via the polls without having their votes count in determining the result not a constitutional right, therefore, but it also runs contrary to the California Constitution.

Plaintiffs next argue that California's semi-closed primary system is unconstitutional because it requires NPP voters to jump through hoops to participate in the presidential primary election as crossover voters, a process which is itself unconstitutional because it is unduly burdensome and leaves some NPP voters confused.  We do not agree.

Most electoral regulations—including voter and party registration— "require that voters take some action to participate in the primary process." (*Clingman*, *supra*, 544 U.S. at p. 593; see also *Rosario v. Rockefeller* (1973) 410 U.S. 752, 760–762 [upholding requirement that voters change party registration 11 months before primary election].)  Here, voters may change their party registration up until 15 days before an election.  (§ 2119.) Even if voters miss that deadline, they may still cast a ballot in a party primary using the conditional voter registration process before or on the day of the election.  (§ 2170.)  They can also take other "action to participate in the primary process" by requesting a crossover ballot via mail or at their polling place.  (*Clingman*, at p. 593.)  That California NPP voters wishing to vote in a primary election must read their mail or otherwise seek out information to request a crossover ballot cannot reasonably be classified as a severe burden.  It is "not difficult" to " 'ask[ ] for the appropriate ballot at the

---

5    Courts ordinarily follow the Legislature's definition of a word used in the Constitution if it is a reasonable construction.  (*Kaiser v. Hopkins* (1936) 6 Cal.2d 537, 540.)

appropriate time,' " and tasks like requesting a ballot or filing a form constitute "minimal effort." (*Clingman*, at pp. 590–592.) Such "minor barriers between voter and party do not compel strict scrutiny." (*Id.* at p. 593.)

We therefore conclude that, even accepting all plaintiffs' allegations as true, the burdens plaintiffs identify are minimal.

C. *Sufficient State Interests Justify the Minimal Burdens*

The second step of the *Anderson/Burdick* balancing test requires us to consider California's interests in imposing the voter restrictions and weigh those interests against the burdens. Where, as here, the challenged election law is reasonable, nondiscriminatory, and does not place a heavy burden on voters' rights, " 'a State's important regulatory interests will usually be enough to justify' " the law. (*Clingman, supra,* 544 U.S. at p. 593, quoting *Timmons, supra,* 520 U.S. at p. 358.) Plaintiffs contend that the state lacks a legitimate reason to treat NPP voters and party-affiliated voters differently— in other words, that the state's interests are insufficient to justify the restrictions of section 13102—and that the Secretary has failed to identify any state interests, as opposed to political party interests, that support section 13102. We reject these contentions.

Plaintiffs' argument that the state's interests are insufficient to justify treating NPP voters differently from party-affiliated voters is again foreclosed by United States Supreme Court precedent. First, the Court has already found that "[i]n facilitating the effective operation of [a] democratic government, a state might reasonably classify voters or candidates according to political affiliations." (*Clingman, supra,* 544 U.S. at p. 594, internal quotation marks omitted.) States are therefore "allowed to limit voters' ability to roam among parties' primaries" by, for example, requiring them to

20

register with a party before voting in a primary and prohibiting voters in one party from voting in another's primary. (*Id.* at pp. 594–595.)

Second, the state interests asserted here are the same as those the Court held in *Clingman* to be sufficient to justify minimal burden on voters. As in *Clingman*, California's semi-closed primary "advances a number of regulatory interests that [the Supreme] Court recognizes as important: It 'preserv[es] [political] parties as viable and identifiable interest groups'; enhances parties' electioneering and party-building efforts; and guards against party raiding and 'sore loser' candidacies by spurned primary contenders." (*Clingman, supra*, 544 U.S. at pp. 593–594, internal citations omitted.) These important state interests easily justify the minimal burdens California's presidential primary system imposes on voters.

The State also has a compelling interest in "the integrity of the primary system" and " 'avoid[ing] primary election outcomes which would tend to confuse or mislead the general voting population . . . .' " (*Clingman, supra*, 544 U.S. at p. 594.) This interest would be undermined by plaintiffs' proposed system. According to their theory, NPP voters have a right to have their presidential primary votes "tallied and reported by the State," but not actually used in determining the party nominee. As a result, the reported "winner" of a party's presidential primary (including NPP voters) could differ from the actual winner (excluding NPP voters). This could undermine public confidence in the election and create the false perception of a rigged primary. It would also create massive confusion to allow some voters to participate in a presidential primary without having their votes used to determine the result. NPP voters would be casting genuine votes for nonpartisan offices, voter-nominated offices, and measures on the ballot, but only token votes for a presidential primary candidate on the same ballot. Many NPP voters would

21

likely be misled into believing that their presidential primary votes would count towards the outcome. In such a bewildering election system, the public would have reason to question whether all genuine votes were being properly counted and all token votes properly excluded. The State's strong interest in maintaining public confidence in the integrity of the election system outweighs any interest of NPP voters to cast purely symbolic votes for the candidate of a political party they have chosen not to join.

We therefore conclude that the trial court properly sustained the demurrer as to plaintiffs' claims based on their freedom of association, equal protection, and due process rights.

III

Plaintiffs also contend that the presidential primary election system violates the California Constitution's prohibition on private use of public funds found in section 3 of article XVI, which provides that, subject to certain exceptions, "[n]o money shall ever be appropriated or drawn from the State Treasury for the purpose or benefit of any corporation, association, asylum, hospital, or any other institution not under the exclusive management and control of the State as a state institution, nor shall any grant or donation of property ever be made thereto by the State." (Cal. Const., art. XVI, § 3.) Plaintiffs argue that the primary system violates the constitution because it (1) serves a predominantly private purpose despite being financed by public funds and (2) disenfranchises NPP voters. They cite no authority in support of this claim but explain that "it is the constitutionally infirm presidential-primary system . . . that causes the appropriation of public funds in support of that system to be, likewise, constitutionally infirm." Because we have already rejected plaintiffs' claim that California's presidential primary

22

system is unconstitutional, it follows that their claim regarding the use of public funds in support of that system must likewise be rejected.

Even considering this argument separately from the others, we conclude that it is without merit. California's primary election plainly serves a public purpose, as primaries are " 'an integral part of the entire election process.' " (*Burdick*, *supra*, 504 U.S. at p. 439, quoting *Storer*, *supra*, 415 U.S. at p. 735.) Primaries "avoid burdening the general election ballot with frivolous candidacies" (*Jones*, *supra*, 530 U.S. at p. 572) and "avoid the possibility of unrestrained factionalism at the general election" (*Munro v. Socialist Workers Party* (1986) 479 U.S. 189, 196), both important goals that benefit the public. And the costs associated with holding these primary elections do not arise "because the parties decide to conduct one, but because the State has, as a matter of legislative choice, directed that party primaries be held." (*Bullock v. Carter* (1972) 405 U.S. 134, 148.) California "has presumably chosen this course more to benefit the voters than the candidates" or parties. (*Ibid*.) We therefore disagree with plaintiffs' conclusory statement that the presidential primary is for the exclusive benefit of political parties. To the extent that NPP voters feel disenfranchised by the primary system, they may simply join the party or request a crossover ballot. (See *Jones*, at p. 572; *Clingman*, *supra*, 544 U.S. at p. 590.)

In sum, we agree with the trial court that, despite multiple opportunities to amend their complaint, plaintiffs have failed to plead facts

that could entitle them to relief.[6]  We therefore conclude that the demurrer was properly sustained in its entirety.

DISPOSITION

The judgment of the trial court is affirmed.  Respondents are entitled to recover their costs on appeal.

BUCHANAN, J.

WE CONCUR:


IRION, Acting P. J.


DO, J.

---

[6]    Plaintiffs do not argue that they are entitled to leave to amend their complaint again, nor do they suggest a different set of facts they would have pleaded if granted leave (see *Rubin v. Padilla, supra*, 233 Cal.App.4th at p. 1154), so we do not address that issue.

CERTIFIED FOR PUBLICATION

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| JIM BOYDSTON et al.,<br><br>    Plaintiffs and Appellants,<br><br>    v.<br><br>ALEX PADILLA, as Secretary of State, etc., et al.,<br><br>    Defendants and Respondents. | D080921<br><br>(Super. Ct. No. CIVDS1921480)<br><br>ORDER CERTIFYING OPINION FOR PUBLICATION |

THE COURT:

The opinion in this case filed March 21, 2023 and modified on April 11, 2023 was not certified for publication. It appearing the opinion meets the standards for publication specified in California Rules of Court, rule 8.1105(c), the request pursuant to rule 8.1120(a) for publication is GRANTED.

IT IS HEREBY CERTIFIED that the opinion meets the standards for publication specified in California Rules of Court, rule 8.1105(c); and

ORDERED that the words "Not to Be Published in the Official Reports" appearing on page one of said opinion be deleted and the opinion herein be published in the Official Reports.


IRION, Acting P. J.

Copies to:  All parties